[Crim. No. 10480. First Dist., Div. Two. Feb. 27, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES V. PINEDA, Defendant and Appellant.

## Counsel

Miriam Morse, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Gloria F. DeHart and April P. Kestell, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**KANE, J.**—Defendant Charles V. Pineda appeals from a judgment of conviction entered on a jury verdict finding him guilty of second degree robbery in violation of Penal Code, sections 211 and 211a.

The facts leading to appellant's conviction may be summarized as follows: On August 25, 1971, around 1 p.m., two men approached Angelo Buccelli ("Buccelli"), the owner of the Speedy Seven-Eleven Mart at 3070 Senter Road, San Jose, California. One of the men, who later was identified as appellant, demanded that Buccelli empty the money from two cash registers into a brown bag if he did not want to get hurt. After taking approximately $141 plus a black cash register tray from

one register, the two men left the store and ran behind it to a parked white Pontiac in which they drove away at a high speed.

Shortly after, the police arrived at the scene of the crime. Buccelli gave the police a detailed description of appellant as the one who demanded the money, keeping his hand in his shirt as if grasping a weapon. Two boys, who eyewitnessed the events standing outside the store, gave a fairly accurate description of the getaway car. Upon the data thus furnished, appellant was arrested at about 8:40 p.m. as he was riding in the getaway car in the company of one Paul Warren ("Warren"), the driver of the car, and one Lannie Littlejohn. Both appellant and Warren were arrested for the robbery of the Speedy Mart; however, the charges against Warren were dismissed at the preliminary hearing.

Appellant was abundantly connected with the commission of the crime. Thus, Buccelli positively identified him both in court and from pictures shown him the day after the crime. One of the eyewitness boys testified that he saw two men exiting the store, and from the police photographs and in court he identified appellant as the one who was carrying the cash register tray and the brown bag. His testimony was corroborated by the other boy who stated that appellant carried the black tray. He also identified appellant from the pictures and in court. A fourth witness, a gas station attendant, stated in his testimony that he saw two men run out of Speedy Mart and get into a white car which had a baby in it. His testimony was reaffirmed by the police officer who searched the car after the arrest and, in addition to .38 caliber bullets, found a baby diaper bag and diapers in the trunk. As later discovered evidence revealed, the car was registered to one Irene Teran, Warren's girlfriend, who had a young baby whom Warren took with him for drives in the Pontiac.

Appellant who testified on his own behalf denied any complicity or participation in the crime. Although he could not recall his whereabouts at 1 p.m. on August 25, 1971, he insisted that he spent all day with his common law wife and only around 7 p.m. met Warren who offered him a ride which he accepted. Both sides stipulated that appellant's common law wife who was unavailable as a witness would have testified that appellant was with her all day August 25, 1971. Upon this evidence the jury found appellant guilty of second degree robbery.

Appellant contends on appeal that his constitutional right to effective assistance of counsel was denied because his lawyer (a) was obliged to represent interests adverse to appellant; (b) failed to fully investigate facts pertaining to the defense; and (c) failed to request immunity for Warren, a material witness, thereby depriving appellant of a crucial defense.

For the reasons which follow, we reject appellant's contentions and affirm the judgment.

■ (a) Appellant's conflict of interest argument is predicated upon the following circumstances: In addition to appellant, Warren was also arrested and charged with the Speedy Mart robbery. At the time of his arrest Warren was represented by the same public defender's office of which appellant's trial counsel, Mr. Lucero ("Lucero") was a member. During an interview with the representative of the public defender's office (an attorney other than Lucero) Warren made confidential communications relative to the robbery ("confidential information"). The contents of this confidential information, however, had not and could not have been revealed at appellant's trial because they were protected by the attorney-client privilege and Warren failed to give his consent to their divulgence. The record also discloses that at the preliminary hearing stage the charges against Warren were dropped; but as a parole violator he was sent back to prison. In an attempt to link Warren rather than appellant to the commission of the crime, Lucero called Warren to the witness stand. After having been advised by the court on his Fifth Amendment privilege against self-incrimination, Warren invoked the privilege and refused to answer any questions. Based upon the assumption that Warren's refusal to testify was attributable to his prior confidential information, Lucero claimed that, by virtue of the confidential relationship between himself and Warren, he was compelled to withhold any effective examination or cross-examination of Warren. He thus urged that a conflict of interest had arisen and moved for a mistrial and appointment of separate counsel. Appellant argues that the court's denial of this motion was erroneous because the right to effective counsel comprises an undivided loyalty and untrammeled assistance, which, under the circumstances here shown, could not be provided. This argument of appellant must fail because (1) the claimed conflict of interest did not exist within the meaning of the law, and (2) even if a potential conflict be assumed, appellant did not sustain the burden of proof that Warren invoked his constitutional right due to the confidential information and/or that he would have given consent to divulge the same if another attorney had been appointed.

■ Under well established general law, if counsel must represent conflicting interests or is ineffective because of the burdens of representing *more than one defendant,* the injured defendant has been denied his constitutional right to effective counsel (*People* v. *Chacon* (1968) 69 Cal.2d 765, 774 [73 Cal.Rptr. 10, 447 P.2d 106, 34 A.L.R.3d 454]). The cases, however, emphatically point out that the conflict of interest thus contemplated *may arise only among codefendants* in certain situations, e.g.,

when it would profit one defendant at the price of attacking the credibility of another (*People* v. *Kerfoot* (1960) 184 Cal.App.2d 622 [7 Cal.Rptr. 674]); or when counsel would be restricted in final summation because he might injure one defendant by arguments in favor of another (*People* v. *Donohoe* (1962) 200 Cal.App.2d 17 [19 Cal.Rptr. 454]); or when one defendant has a record of prior felony convictions and the others do not (*People* v. *Douglas* (1964) 61 Cal.2d 430 [38 Cal.Rptr. 884, 392 P.2d 964]); or when the defenses of codefendants are factually inconsistent (*People* v. *Welch* (1963) 212 Cal.App.2d 397 [28 Cal.Rptr. 112]); or when in cases of multiple defendants counsel believes that a conflict of interest may exist (*People* v. *Odom* (1965) 236 Cal.App.2d 876, 878 [46 Cal.Rptr. 453]). As the court put it in *People* v. *Johnson* (1970) 5 Cal.App.3d 851, 861 [85 Cal.Rptr. 485], *"Only where there is actual or potential conflict of interest among codefendants* and a motion for appointment of separate counsel is made in a timely fashion, is it incumbent upon the trial court to appoint separate counsel" (italics added).

The facts before us irrefutably reject any proposition of simultaneous representation. It is undeniable that Warren was not a codefendant at the time of the trial because the charges against him had been dismissed earlier. There is no claim, and even less proof, to the effect that Warren had ever been represented by Lucero. The mere fact that Warren was previously represented by the same public defender's office at which Lucero worked does not, standing alone, give rise to an inference of any conflict of interest. On the contrary, in the absence of some affirmative showing that a particular deputy public defender has acquired confidential adverse information about a defendant from the files or other employees of the office, any claim of conflict of interest would be groundless.

But even assuming arguendo that Lucero's alleged divided loyalty created a conflict of interest, we still fail to see how the appointment of another counsel could have remedied the situation. We fully agree with the trial judge who, in denying the motion for mistrial and the appointment of another counsel, emphasized that neither Lucero nor any other attorney could use the confidential information obtained from Warren without his consent. The record, however, discloses that Warren, without any explanation, failed to give his consent to divulging the confidential information and refused to answer questions on the witness stand. If appellant's argument is to be interpreted that Warren's silence was occasioned by the conflict itself, we can only reply that, under well settled law, he had a paramount, absolute right to keep silent which was in no way subordinated to the needs of appellant (*People* v. *Bernal* (1967) 254 Cal.App.2d 283, 292 [62 Cal.Rptr. 96]). Furthermore, appellant introduced no evidence what-

ever to show that Warren would have consented to releasing the confidential information to another attorney and/or that he had invoked the privilege against self-incrimination due to the alleged conflict. Absent such a showing, appellant's claim of conflict is entirely groundless. As the court aptly put it in *People* v. *Bernal, supra,* "Silence of the possible witness as a matter of constitutional right forecloses supposition of the basic facts which must exist as a foundation for inference. And if no facts are available upon which to found an inference, any supposed inference is actually only a matter of conjecture, speculation or imagination." (P. 293.)

We note that *People* v. *Grays* (1968) 265 Cal.App.2d 14 [71 Cal.Rptr. 32] (hg. den., cert. den. 394 U.S. 1004 [22 L.Ed.2d 781, 89 S.Ct. 1600]), upon which appellant places his main reliance, is distinguishable from the case at bench. The parallel between the two cases begins and ends with the circumstance that codefendant Smith, like Warren here, was discharged from the case at an early stage, was called to testify on Grays' behalf, which he refused to do on the basis of this Fifth Amendment privilege. However, in *Grays* there was an actual corepresentation of the codefendants by the same counsel at the arraignment. In addition, Grays' counsel gave actual legal assistance which adversely affected Grays by advising Smith on his constitutional right to remain silent. The claim of divided loyalty was based on this very circumstance. Despite these significant differences, the court held in *Grays* that, even if requested, there was no duty upon the court to appoint another counsel because, inter alia, there was no showing that the appointment of a new counsel would have benefited defendant in any way; and, furthermore, because the record disclosed that counsel for defendant conducted an able and vigorous defense throughout the case. (P. 23.) The very same equally holds true in the case at bench.

(b) Appellant's second argument is stated merely in the alternative and would have applicability only if we had upheld the denial of the motion on the grounds that it had been raised belatedly on the third day of the trial. However, since we have concluded that the ruling of the trial court was proper because no conflict of interest existed, appellant's contention that the delay in submitting the motion was due to an insufficient investigation of facts by the trial counsel has become moot and irrelevant.

■■■ (c) Appellant's final claim that his counsel's failure to request immunity for Warren under Penal Code, section 1324, constituted withdrawal of a crucial defense from his case is also groundless and must be rejected.

It is well settled that the constitutional right to the assistance of counsel in criminal cases includes the guarantee that such assistance be effective. However, the effective counsel required by due process is not an errorless

counsel; rather, it is counsel reasonably likely to render effective assistance (*In re Saunders* (1970) 2 Cal.3d 1033, 1041 [88 Cal.Rptr. 633, 472 P.2d 921]). While it has been said that it is counsel's duty to investigate carefully all defenses of fact and law that may be available to the defendant, and if his failure to do so results in withdrawing a crucial defense from the case the defendant has not had the assistance to which he is entitled (*People* v. *Ibarra* (1963) 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487]), the cases stress that it is not sufficient to allege merely that the attorney's tactics were poor or that the case might have been handled more effectively (*People* v. *Reeves* (1966) 64 Cal.2d 766, 773 [51 Cal.Rptr. 691, 415 P.2d 35]; *People* v. *Floyd* (1970) 1 Cal.3d 694, 709 [83 Cal.Rptr. 608, 464 P.2d 64]). To justify relief on this ground, an extreme case must be disclosed and it must appear that the counsel's lack of diligence or competence reduced the trial to a " 'farce or a sham' " (*People* v. *Ibarra; People* v. *Floyd,* both *supra*). In accord with these principles, the courts have found withdrawal of a crucial defense only in cases where defense counsel displayed shocking incompetence or gross negligence (e.g., failure to challenge an illegal search and seizure (*People* v. *Ibarra, supra*); or failure to invoke the defense of diminished capacity in the face of an existing medical record (*In re Saunders, supra*); or failure to undertake a minimal investigation into the truth of the prosecution's allegation of prior conviction (*People* v. *Shells* (1971) 4 Cal.3d 626 [94 Cal.Rptr. 275, 483 P.2d 1227])) *and* where, by sheer invocation such defense could have been conclusively established.

In contrast, in the case at bench there is not only an absence of duty upon the defense counsel to request immunity for a witness, but under the explicit provisions of Penal Code, section 1324,[1] such power is exclusively vested in the prosecution. ■ The cases interpreting this code section emphasize that the purpose of the immunity statutes is to make it possible to reach the leaders of criminal conspiracies by guaranteeing immunity to the underlings and minor helpers, and *to enable the People* to secure testi-

---

[1]Penal Code, section 1324, provides in part that: "(a) In any felony proceeding, in any investigation or proceedings before a grand jury for any felony offense, or in any investigation of a criminal organization or organized crime and its activities conducted by the Attorney General, if a person refuses to answer a question or produce evidence of any other kind on the ground that he may be incriminated thereby, and *if the district attorney* of the county *or the Attorney General in writing requests* the superior court for that county to order that person to answer the question or produce the evidence, a judge of the superior court shall set a time for hearing and order the person to appear before the court and show cause, if any, why the question should not be answered or the evidence produced, and the court shall order the question answered, or the evidence produced unless it finds that to do so would be clearly contrary to the public interest, or could subject the witness to a criminal prosecution in another jurisdiction, and that person shall comply with the order." (Italics added.)

mony and other evidence from such persons (*People* v. *Williams* (1970) 11 Cal.App.3d 1156, 1164 [90 Cal.Rptr. 409]; *People* v. *Stewart* (1969) 1 Cal.App.3d 339, 343 [81 Cal.Rptr. 562]). Accordingly, the cases hold that the *prosecuting attorneys are vested with discretion in requesting immunity* (*People* v. *Traylor* (1972) 23 Cal.App.3d 323, 332 [100 Cal.Rptr. 116]) and the state is under no obligation to make a witness available to testify for a defendant by granting him immunity from prosecution (*In re Marshall K.* (1970) 14 Cal.App.3d 94, 99 [92 Cal.Rptr. 39]).

■ Thus, it cannot be claimed with reason that defense counsel's failure to request immunity constituted withdrawal of any defense, let alone a crucial one.

The judgment is affirmed.

Taylor, P. J., and Rouse, J., concurred.