[Crim. No. 42215. Second Dist., Div. One. Aug. 11, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
PHILLIP ARTHUR THOMPSON, Defendant and Appellant.

**COUNSEL**

Harland W. Braun for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Robert F. Katz and Lisa B. Lench, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**LILLIE, J.**—Following denial of defendant's motion to dismiss information on the ground he was immunized from prosecution, the cause was submitted

to the trial court on the reporter's transcript of testimony taken at the preliminary hearing. Defendant appeals from judgment entered on his conviction of robbery of Arthur Suel and finding to be true the allegations of armed with a firearm and the taking in excess of $100,000.

The main appellate issue is whether the grant of transactional immunity given to defendant by an order of the Orange County Superior Court under section 1324, Penal Code, in People v. Willie Ray Wisely (Super. Ct. Orange Co., No. C-48114), included immunity from prosecution for the within robbery charge then pending in the Los Angeles Superior Court.

On August 24, 1981, defendant was charged in Los Angeles County with the February 10, 1981, robbery of Arthur Suel; Willie R. Wisely was charged in a separate information with the same robbery. Meanwhile, Wisely was charged in Orange County with the March 9, 1981, murder of his stepfather Robert Bray (People v. Wisely (Super. Ct. Orange Co., No. C-48114).)

Trial of Wisely in the Bray murder case started in the Orange County Superior Court in January 1982; the district attorney therein sought defendant Thompson's testimony regarding Wisely's solicitation of him to kill Robert Bray for $50,000, and Wisely's subsequent admission to him he had killed Bray; and on January 12, 1982, he called defendant as a prosecution witness in the Wisely trial to so testify. Defendant refused to answer questions invoking his privilege against self-incrimination, whereupon the district attorney signed and filed petition for an order compelling testimony under section 1324, Penal Code, setting out the substance of the testimony defendant represented to him he would give.[1] At the section 1324 hearing on the petition, defendant's counsel stated his position that if defendant were granted transactional immunity it had to extend to "all alleged crimes that he may have directly or indirectly participated with [Wisely]" in the absence of which "the immunity is not broad enough," advising the court of defendant's pending robbery prosecution in the Los Angeles County Superior

---

[1]"That the witness . . . has represented that the testimony of the witness will be in substance as follows: In April 1980 Willie Wisely solicited me to kill his stepfather. I told him I'm not into that kind of thing I'm not interested. About 2 weeks later he asked me again. Offering me land in the Fresno area—I told him I'm not interested. [¶] I saw Wisely again in Jan of 1981—I spent a few days with him in the Orange County area. He asked me if I would kill his stepfather at an out of state truck stop. He offered me $50,000 in cash. He said I could make it look like a robbery. He showed me $3,000 in cash—I told him I was not interested at all. He asked me if I could someone to do it. I told him 'No way.' [¶] On March 13, 1981 Willie Wisely told me he killed his stepfather. Shortly thereafter he told me the same thing stating that either he (Willy) or JD held Mr. Bray down while the other let the car down on him. Willie said he had control of the property and there was only one loose end. JD is. He said he intended to off JD—and he bought a specific gun an AR 15 to do it with."

Court; he argued that section 1324 provides for transactional immunity, "and the transaction has to be the relationship between Mr. Wisely and Mr. Thompson." In response, the district attorney made it clear that the only transaction his offer of immunity covered was the murder of Bray, and suggested that in addition to granting section 1324 transactional immunity in the Bray murder, the court could order that anything that defendant says in the murder trial about the pending robbery charge cannot be used against him in Los Angeles County in the robbery case; and stated that the only issue before the Orange County Court was the murder of Robert Bray, and that any evidence regarding the robbery was not within the scope of transactional immunity which he offered.[2] Defendant's counsel insisted there is no use immunity in California because the statute provides for transactional immunity only, and that transaction covers the entire relationship of defendant and Wisely. The district attorney contended that transactional immunity does not cover every area of conduct that may have occurred between defendant and Wisely but only that relating to the murder of Bray and not to any robbery that Wisely may have been involved in in Los Angeles—"This is not transactional immunity that covers the entire relationship between the parties"—and stated that the district attorney was willing to give defendant only transactional immunity regarding the Bray death and use immunity regarding anything defendant says about the Los Angeles robbery. After further colloquy the court stated its willingness to sign an order such as outlined by the district attorney.

Thereafter, the court ordered defendant "to answer questions in the areas propounded which relate to the interview, which the witness Thompson gave to the officers, and it is further ordered that after complying with this order and testifying fully and truthfully as to his knowledge of the facts out of which the charges arose, the witness shall [not] be prosecuted or subject to criminal penalty or forfeiture on account of any fact or evidence which

[2]Mr. Freeman (deputy district attorney) advised the court, "As I have indicated to counsel, the matter before the court is the killing of Robert Bray, which occurred in March—which occurred on March the 9th, which we have prepared a petition to compel his testimony relative to the evidence he has that has been communicated to him by Wisely as to the killing of Mr. Bray and that is the transaction pursuant to the language of 1324 of the Penal Code, and the annotations and the cases cited that we are concerned about. [¶] What other crimes Mr. Wisely or Mr. Thompson may have been involved in is not a legitimate subject matter before this court. In terms of inquiry, I have related this to counsel. This is not admissible material relative to any robbery that occurred. . . . [¶] 30 days before Mr. Bray's death is not—is not before this court. It is no part of this transaction at all. The transaction is the death of Mr. Bray, and the testimony that Mr. Thompson has relative to that subject matter, as indicated in the petition, and the—that the statement that Wisely has related to Thompson, they have nothing to do with the robbery. The statements are not remotely connected to any robbery that Thompson or Wisely are charged with in Los Angeles County. [¶] I think the scope under that—of this petition as submitted to the court is—complies with the law in the case. It covers the total transaction of the death of Mr. Bray and we—we'd submit it so far to you on that analogy."

said witness was required to produce in accordance with this order. [¶] The court is expressing no particular opinion as to this court granting immunity to the witness as to any crime which is pending against the witness in superior court in any other jurisdiction. [¶] The court is indicating that nothing that that witness is compelled to state in these proceedings can in any way be used against that witness in any proceedings in any other jurisdiction, be it state or federal. [¶] That is the ruling of the court." The court then signed the order requiring the witness to answer such questions as may be propounded in People v. Wisely and which otherwise the witness would have been privileged to withhold as being self-incriminating, and after complying with the order and testifying fully and truthfully, "as to his knowledge of the facts out of which the charges arose, indicated in the petition for an order compelling testimony of witness filed by the People in this matter, said witness shall not be prosecuted . . . on account of any fact or evidence which said witness was required to produce in accordance with this order."

Thereafter defendant took the witness stand and refused to answer questions; the court recessed until the next morning when, after speaking with his counsel, defendant again refused to testify saying "[his counsel] said the immunity was a bunch of crap." For failure to answer, he was ordered jailed for contempt. Seven days later defendant returned to court stating his willingness to testify, but asked for a restatement of the immunity order whereupon the prosecutor explained the same and offered him a copy thereof. Defendant was then asked questions regarding his conversations with Wisely about killing his (Wisely's) stepfather; defendant denied he had any such conversations testifying that he lied when he told police that he had because he was mad at Wisely who he had thought made statements about him to some officers about something that happened in Los Angeles County. The district attorney then asked, "Are you charged with the same thing Willie is charged with in Los Angeles?" and defendant refused to answer the question. The district attorney and the court honored the refusal and the district attorney proceeded to inquire of defendant whether he ever talked with a certain officer about what the officer could do for him if he gave statements about Wisely's involvement, and defendant volunteered "I told him that I wasn't guilty of any crimes in Los Angeles County and that Wisely had said that I was and that I thought that it might be good for him to look into that and he said he would." Defendant was not cross-examined.

A week later Wisely called defendant as his own witness. On direct examination defendant testified that at the time he made statements to police implicating Wisely in the Bray murder, he was angry with Wisely for falsely implicating him in the Los Angeles case and he thought his cooperation with police would cause the charges to be dropped. Pursuant to Wisely's questions, defendant admitted he was charged in Los Angeles County with the

February 10, 1982, robbery and testified he had never been in The Corner Store Antiques, had never seen a man named "Arthur Sewell [*sic*]" outside the courtroom, and had been in Central America on February 10 and Wisely had not been with him on February 10.

Based upon the foregoing, defendant moved to dismiss the information pursuant to section 995, Penal Code; the order denying the motion is the subject of this appeal.

■ Appellant's contention that the transactional immunity granted to him by order of the Orange County Superior Court under section 1324, Penal Code, covered any and all charges pending against him about which he testified, is without merit factually and legally.

■ Section 1324, Penal Code, provides statutory authority for the court to grant transactional immunity but permits transactional immunity orders only upon request of the district attorney. (*Daly* v. *Superior Court* (1977) 19 Cal.3d 132, 146 [137 Cal.Rptr. 14, 560 P.2d 1193].) The decision to initiate the request for immunity is vested exclusively in the district attorney (*People* v. *Sutter* (1982) 134 Cal.App.3d 806, 814 [184 Cal.Rptr. 829]; *People* v. *Label* (1974) 43 Cal.App.3d 766, 774 [119 Cal.Rptr. 522]; *People* v. *Pineda* (1973) 30 Cal.App.3d 860, 866-868 [106 Cal.Rptr. 743]; see also *In re Weber* (1974) 11 Cal.3d 703, 720 [114 Cal.Rptr. 429, 523 P.2d 229]; the prosecution alone controls the invocation of the immunity statute. (*People* v. *Campbell* (1982) 137 Cal.App.3d 867, 878, fn. 10 [187 Cal.Rptr. 340].) "[T]he decision to seek immunity is an integral part of the *charging* process, and it is the prosecuting attorneys who are to decide what, if any, crime is to be charged. [Citation.]" (*In re Weber, supra,* 11 Cal.3d 703, 720; original italics.) When properly invoked, section 1324 grants immunity from prosecution for or on account of any fact concerning which, "in accordance with the order," the witness was required to testify. (*People* v. *Campbell, supra,* 137 Cal.App.3d 867, 877.)

Thus it is clear that it is within the sole discretion of the district attorney to limit the grant of transactional immunity as he sees fit in exchange for the testimony of the witness. (*People* v. *Label* (1974) 43 Cal.App.3d 766, 774 [119 Cal.Rptr. 522].) In *Label* appellant attacked the propriety of a limited rather than a general grant of immunity under section 1324, Penal Code. The grant was limited to any drug offense with which she may have been connected during a specified period. The court upheld the limited grant of immunity on the theory that the decision to initiate the request rests in

the sole discretion of the district attorney. Said the court at page 774: "We are of the opinion that to require a prosecuting attorney to grant blanket immunity for any and all criminal acts as the price of testimony under section 1324 would completely frustrate the purpose of said section. We see no impropriety in limiting the immunity to designated crimes committed within a specified period of time. It follows that the immunized witness may not be compelled to testify as to possible involvement at other times. As to such involvement, any witness stands in the same position as any other witness . . . ." Thus, the grant of immunity covered only drug offenses during a specified period but defendant had the right to assert her privilege against self-incrimination when questioned as to her use of drugs *before* the commencement of that period. Although testimony was not compelled in *People* v. *Superior Court* (*Crook*) (1978) 83 Cal.App.3d 335 [147 Cal.Rptr. 856] and *People* v. *Brunner* (1973) 32 Cal.App.3d 908 [108 Cal.Rptr. 501], these cases too, point up the power of the district attorney to limit a grant of immunity. In *People* v. *Superior Court* (*Crook*), prior to the commencement of any questioning by police, the district attorney offered defendant immunity from prosecution for certain service station burglaries for information relative thereto. The court upheld the offer and grant of immunity limited in scope to the service station burglaries, and held that his confession to a residential burglary was voluntarily given without promise of immunity, and it was error to suppress it. Said the court at page 341 of 83 Cal.App.3d: "Thus, the totality of the evidence reveals a grant of limited immunity which, although not formalized pursuant to Penal Code section 1324, was within the inherent power of the prosecuting authority to grant. [Citations.]" *People* v. *Brunner* demonstrates the power of the district attorney outside of section 1324 to informally arrange immunity with a witness for her testimony about another crime.

*People* v. *Campbell* (1982) 137 Cal.App.3d 867 [187 Cal.Rptr. 340], relied upon by appellant, also recognized the power of the prosecutor to offer limited immunity although there the immunity order included "*any* relevant testimony the defendant might be asked to give . . . ." (p. 877; original italics), a factor which dictated the result. Said the court at page 878, footnote 10, "To use a common and colorful phrase, the defendant has been given an immunity bath. But this is so only because the prosecution has drawn the bathwater. It need not have done so. The prosecution alone controls the invocation of the immunity statute (see *Daly* v. *Superior Court*, *supra*, 19 Cal.3d at p. 146; *People* v. *Williams* (1968) 265 Cal.App.2d 888 [71 Cal.Rptr. 773]) and the scope of questions required to be answered (see *People* v. *Label*, *supra*, 43 Cal.App.3d at p. 774). Moreover, the prosecution did not seek to limit the scope of defendant's testimony, a course of action which also might have obviated the result we are compelled to reach.

Nor did the trial court seek to weigh the consequences of immunity against the need for the testimony, by invoking its statutory power to determine whether immunity 'would be clearly contrary to the public interest.' (Pen. Code, § 1324.)''

 Section 1324, Penal Code, authorizes a grant of transactional immunity; immunity can be granted by the court only on request of the district attorney, and it is the district attorney who limits the immunity given under the statute; an order for transactional immunity under section 1324 is not a blanket order that immunizes a person from prosecution for any offense committed at any time about which the witness may have testified when limited by the district attorney; for which crimes the district attorney is willing to grant immunity from prosecution lies in his sole discretion; here in his petition the district attorney specifically limited the scope of inquiry and the immunity offered; the order followed the request in the petition. Nothing in the petition or order relates to questions involving the pending robbery charge in Los Angeles. At the section 1324 hearing the district attorney made it abundantly clear that he was offering a grant of immunity from prosecution to defendant limited solely to the murder of Robert Bray, and use immunity for any testimony defendant might give about the pending Los Angeles robbery charge, and that the offer of immunity from prosecution did not include the robbery charge. Accepting this offer as outlined by the district attorney, the court ordered defendant to answer questions relative to that testimony defendant represented to the district attorney he would give as set out in the petition, and after testifying as to "his knowledge of the facts out of which the charges [Bray murder] arose," he shall not be prosecuted; but in its order the court said it expressed *no opinion as to the grant of immunity for any pending charges,* and indicated that nothing defendant is compelled to state can be *used* against him in any other prosecution.

The record is replete with evidence that defendant and his counsel knew that the transactional immunity granted to defendant was limited to prosecution for the Bray murder, and that it did not include any other crime. This is reflected in defendant's invocation of his right against self-incrimination in refusing to answer the only question the district attorney asked him (as a People's witness) that might have disclosed the pending robbery charge; as a defense witness, defendant also could have refused to answer Wisely's questions relating to the robbery, but he elected to answer them in detail. If this was used by defendant and Wisely as a ruse to bring the Los Angeles robbery charge within the ambit of immunity from prosecution for the Bray murder, it was unsuccessful.

The contention of the Attorney General that appellant was granted immunity from prosecutorial use of testimony given relative to the robbery appears to be somewhat academic in light of appellant's sole contention that he is immunized from prosecution in this case.[3]

There is here no real issue of use immunity. However, if California courts recognize the existence of judicial use immunity, and it appears that they do (*Daly* v. *Superior Court, supra,* 19 Cal.3d 132, 146; *People* v. *Coleman* (1975) 13 Cal.3d 867, 889-892 [120 Cal.Rptr. 384, 533 P.2d 1024]; *People* v. *Superior Court (Kaufman)* (1974) 12 Cal.3d 421, 427 [115 Cal.Rptr. 812, 525 P.2d 716]; *People* v. *Sutter* (1982) 134 Cal.App.3d 806, 814 [184 Cal.Rptr. 829]; *Byers* v. *Justice Court* (1969) 71 Cal.2d 1039 [80 Cal.Rptr. 553, 458 P.2d 465] (vacated on other grounds in *California* v. *Byers* (1971) 402 U.S. 424 [29 L.Ed.2d 9, 91 S.Ct. 1535]); *People* v. *Superior Court (Crook), supra,* 83 Cal.App.3d 335, 339; *People* v. *Brunner, supra,* 32 Cal.App.3d 908; *Nelson* v. *Municipal Court* (1972) 28 Cal.App.3d 889, 893 [105 Cal.Rptr. 46], the record establishes that the Orange County court, at the request of the district attorney, gave defendant what amounts to use immunity—"nothing that the witness is compelled to state in these proceedings can in any way be used against that witness in any proceedings in any other jurisdiction, be it state or federal."

Finally, without citation of supporting authority, appellant argues that he had the right to a jury trial on the issue of immunity before trial on the robbery charge. He raised this issue after failing in his section 995 motion to dismiss before Judge Ricks and subsequently, in his attempt before Judge Roberson to reopen the motion to dismiss decided by Judge Ricks; he sought to reopen the motion to permit him to request the immunity issue go to jury trial. Judge Roberson denied the motion.

■ The appropriate method for asserting a claim for immunity is by way of motion to quash the indictment or information. (*People* v. *King* (1967) 66 Cal.2d 633, 645 [58 Cal.Rptr. 571, 427 P.2d 171]; *People* v. *Backus* (1979) 23 Cal.3d 360, 361 [152 Cal.Rptr. 710, 590 P.2d 837].) This is the sole method of relief. In any case, here there can be no question of fact for a jury trial for the issue is solely one at law—the legal effect of the order made pursuant to section 1324, Penal Code.

---

[3]On the hearing on the section 995 motion, the district attorney represented to the court that nothing to which defendant testified relative to the Los Angeles robbery in the Wisely murder trial would be used against him. We note, as did the district attorney, that defendant's testimony in this regard was wholly exculpatory.

The judgment is affirmed.

Spencer, P. J., and Riley, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 5, 1983.

*Assigned by the Chairperson of the Judicial Council.