**John Gary ARREDONDO,**
**Petitioner–Appellant,**

v.

**George ORTIZ, Respondent–Appellee.**

**No. 01–57166.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 7, 2003.

Filed April 20, 2004.

11. *Id.* at 76, 123 S.Ct. 1166 (internal quotation omitted).

Karyn H. Bucur, Laguna Hills, CA, for the petitioner-appellant.

Jason C. Tran, Deputy Attorney General, Los Angeles, CA, for the respondent-appellee.

Before KOZINSKI, FERNANDEZ, and RYMER, Circuit Judges.

RYMER, Circuit Judge:

John Gary Arredondo appeals from the district court's denial of his 28 U.S.C. § 2254 habeas petition. Arredondo was convicted by a superior court jury in April 1999 of assault by means of force likely to produce great bodily injury and battery with serious bodily injury in violation of California Penal Code §§ 243(d), 245(a)(1). The only issue before us is whether the trial court violated Arredondo's Sixth Amendment right to present a defense by refusing to order a witness to testify after the witness invoked his Fifth Amendment privilege against self-incrimination as to prior convictions and pending charges. As the California Court of Appeal's decision upholding the trial court's ruling did not run afoul of clearly established law as determined by the United States Supreme Court, we affirm.

I

Arredondo and Robert Reed lived in different rooms in an old hotel in downtown Los Angeles. They were friends and occasionally borrowed money from each other, but they got into a fight on the

evening of September 17, 1998. According to Reed, Arredondo appeared at Reed's door and demanded that Reed repay $10. Reed, who was intoxicated, told Arredondo he did not have the money and asked him to leave. Arredondo entered the room, continuing to demand the money. When Reed pushed him and told him to leave, Arredondo grabbed and shook Reed, hit him, and threw him to the ground. Reed was too intoxicated to fight back. Arredondo first kicked Reed in the chest and then got on top of him and punched him several times in the face. Arredondo left and Reed lost consciousness for at least 30 minutes. When Reed regained consciousness, he went to sleep. The next day Reed realized he needed medical attention, and was hospitalized for four days. The attack caused cerebral bleeding, a fractured eye socket, a cut inside of his mouth, and scalp injuries.

Arredondo's version was quite different. Arredondo testified that he went to Reed's room to collect a debt, and that for no reason, Reed hit him in the head and then pulled him into his room, causing the two men to fall. As the two stood up, Reed hit Arredondo two more times. At that point, Arredondo, acting in self-defense, hit Reed twice. Reed responded by hitting him in the head with a broom. The two men again fell down. Reed stood up and approached Arredondo with a knife. Arredondo grabbed Reed and hit him four times, hoping to render him unconscious. Reed dropped the knife and fell onto the bed. Arredondo left.

Before trial, Arredondo's counsel indicated that he intended to call Jeffrey Hansen to testify that he and a companion saw Arredondo knock on Reed's door and ask for money. Reed opened the door, and punched Arredondo in the face, causing Arredondo to fall backward and then forward into Reed's room, landing on Reed. The door closed, and Hansen and his companion left.

Hansen, who was facing an alcohol theft charge in an unrelated Three Strikes case in which four prior convictions were alleged, was represented by Deputy Public Defender Peter Swarth. Swarth acknowledged that the prosecutor could properly impeach Hansen on cross-examination with his prior felony convictions, but explained that Hansen's answers could potentially incriminate him in his own trial if Hansen later decided to contest whether he had suffered the priors. Swarth also acknowledged that it would be reasonable to question Hansen about his pending charge because theft is a crime of moral turpitude, yet explained that such questioning could get Hansen "into very [sic] trouble." Finally, Swarth told the court that he believed Hansen was on parole, raising the possibility that Hansen's presence at the hotel or his association with Arredondo could constitute a parole violation. Swarth asked to be present during Hansen's testimony so that he could review with Hansen on a question-by-question basis the decision whether to invoke his Fifth Amendment right. The trial court deferred ruling until the defense case was presented.

When that time came, Arredondo offered to stipulate to Hansen's convictions but the prosecution declined. Swarth represented that he had advised Hansen not to testify. Hansen was sworn, and stated that he wanted to "take the Fifth." The trial court concluded that it could not order Hansen to testify, particularly given Swarth's advice and the substantial liability he was facing. The court then ruled that Hansen should not be called in front of the jury or be allowed to testify on direct as he could not be cross-examined.

Arredondo was convicted and subsequently sentenced to an aggregated term of 45 years to life on account of four prior

"serious" felony convictions within the meaning of California's Three Strikes law. The California Court of Appeal reversed two of the prior conviction enhancements, but rejected Arredondo's challenge to the trial court's decision to exclude Hansen's testimony. Arredondo's petition for review was denied by the California Supreme Court.

Arredondo filed a habeas petition in district court claiming that his constitutional right to present a defense was violated when the trial court accepted Hansen's invocation of the Fifth Amendment. The district court denied the petition and Arredondo's application for a certificate of appealability (COA). However, we granted a COA on one issue: "whether the trial court violated appellant's Sixth Amendment right to present a defense by refusing to order a witness to testify after the witness invoked his Fifth Amendment privilege against self-incrimination as to collateral matters."

## II

■ We review a district court's decision to grant or deny a 28 U.S.C. § 2254 habeas petition de novo. *See Benn v. Lambert*, 283 F.3d 1040, 1051 (9th Cir. 2002). Because Arredondo's petition was filed after April 24, 1996, the amendments to § 2254 under the Antiterrorism and Effective Death Penalty Act (AEDPA) apply. *Id.* Under AEDPA, Arredondo is not eligible for federal habeas relief unless the decision of the California Court of Appeal, the last reasoned decision from the state court system, was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

28 U.S.C. § 2254(d); *see also Benn*, 283 F.3d at 1051.

■ First, however, we must consider whether a *Teague* analysis is required. *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), teaches that a new rule of constitutional law cannot be applied retroactively on federal collateral review to upset a state conviction or sentence unless the new rule forbids criminal punishment of primary, individual conduct or is a "watershed" rule of criminal procedure. *Caspari v. Bohlen*, 510. U.S. 383, 396, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994). The Supreme Court has made clear that federal courts must decide at the outset whether *Teague* is implicated if the state argues that the petitioner seeks the benefit of a new rule. *Id.* at 389, 114 S.Ct. 948. This is true regardless of whether the case is governed by AEDPA. *Horn v. Banks*, 536 U.S. 266, 272, 122 S.Ct. 2147, 153 L.Ed.2d 301 (2002). We fully recognize our *Teague* obligation, but do not believe it has been triggered in this case. The state does mention *Teague* in its brief, but only in passing. The brief simply asserts that reasonable jurists could conclude under the facts of this case that Arredondo's claim lacks merit. This is not an argument, let alone a developed argument. Normally we decline to address an issue that is simply mentioned but not argued, *Kohler v. Inter–Tel Techs.*, 244 F.3d 1167, 1182 (9th Cir.2001), and we see no reason to depart from that practice in a habeas appeal. If a state seriously wishes to press *Teague* upon us, at a minimum *Teague* should be identified as an issue (indeed, the first issue) on appeal, the new rule of constitutional law that falls within its proscription should be articulated, the reasons why such a rule would not have been compelled by existing precedent should be explained with particular reference to the appropriate universe of precedent, and an

argument should be made why the rule contended for is not within one of *Teague's* exceptions. No true *Teague* argument having been made by the state in this case, we decline to conduct a *Teague* analysis on our own. *Caspari*, 510 U.S. at 389, 114 S.Ct. 948 (noting that courts may, but do not have to, decline to apply *Teague* if the state does not argue it) (citing *Schiro v. Farley*, 510 U.S. 222, 228–29, 114 S.Ct. 783, 127 L.Ed.2d 47 (1994)).

### III

■ Arredondo's appeal turns on his view that the Fifth Amendment privilege against self-incrimination applies only to testimony that relates directly to the matters at issue in his criminal trial, not to "collateral" matters. For this he relies on *United States v. Esparsen*, 930 F.2d 1461, 1469 (10th Cir.1991) (drawing line between direct and collateral matters); *Denham v. Deeds*, 954 F.2d 1501, 1503–04 (9th Cir. 1992) (upholding exclusion of defense witness's testimony when the witness refused on cross-examination to respond to questions on non-collateral matters); and *United States v. Lord*, 711 F.2d 887, 892 (9th Cir.1983) (holding it was error to strike all of the testimony of a witness who refused to answer question about informant's suppliers). He contends that the right to present witnesses has long been recognized as essential to due process, *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), and that Hansen had no Fifth Amendment right not to testify because his observations of Reed and Arredondo would not have implicated Hansen in any crime. Arredondo points out that the Court held in *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951), that the privilege can be sustained when it is evident from the question that an answer might be dangerous because injurious disclosure might result, but that what Hansen saw in the hallway could not result in an injurious disclosure because his statements about what he saw are not criminal in nature. Based on the same reasoning, Arredondo also argues that the trial court should not have sustained Hansen's privilege on a blanket basis. For this he relies upon Ninth Circuit precedent requiring that the privilege be invoked in response to specific questions, not on a blanket basis, unless the witness can legitimately refuse to answer all relevant questions. *See United States v. Pierce*, 561 F.2d 735, 741 (9th Cir.1977).

Arredondo's reliance on Ninth Circuit or other circuit authority is misplaced. He must show that the California Court of Appeal decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, *as determined by the Supreme Court.*" 28 U.S.C. § 2254(d)(1) (emphasis added). This he has not done, and cannot do. *Chambers* and *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), stand for the general proposition that a defendant's right to present a defense includes the right to offer testimony by witnesses and to compel their attendance. Neither case involved a witness's invocation of his Fifth Amendment privilege against self-incrimination. *Hoffman* does, but it says nothing about whether a trial court may, or may not, refuse to order a witness to testify after invoking the privilege as to prior convictions and pending charges. Nor does it hold that the privilege must always be invoked question-by-question.

In *Chambers*, the defendant was unable to cross-examine a witness who had repudiated a prior confession or to present witnesses who would have discredited that witness's repudiation and demonstrated his complicity in the crime for which the defendant was accused because of the state's

"party witness" or "voucher" rule and its hearsay rule. *Chambers,* 410 U.S. at 294, 93 S.Ct. 1038. The Court held that exclusion of this critical evidence that directly affected the ascertainment of guilt denied Chambers a fair trial. *Id.* at 302–03, 93 S.Ct. 1038. In *Washington,* a percipient witness was prevented from testifying by a state statute, which the Court held violated the defendant's Sixth Amendment right to have compulsory process for obtaining witnesses made applicable to the states through the Fourteenth Amendment. *Washington,* 388 U.S. at 23, 87 S.Ct. 1920. At the same time, the Court stated in *Chambers* that a defendant's right to present relevant testimony is not without limitation and "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Chambers,* 410 U.S. at 295, 93 S.Ct. 1038; *see also Michigan v. Lucas,* 500 U.S. 145, 149, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991) (considering a rape-shield statute); *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (recognizing trial judge's "wide latitude" to limit reasonably a defendant's right to cross-examine a witness based on concerns of harassment, confusion of the issues, the witness's safety, etc.). In *Hoffman,* a witness subpoenaed to testify before a grand jury refused to obey a federal court order requiring him to answer questions with respect to which he invoked the Fifth Amendment. The Court reaffirmed that the provision against self-incrimination must be accorded a liberal construction, and reversed the order to testify. In so doing it explained that the trial judge in appraising the claim " 'must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence.' " *Hoffman,* 341 U.S. at 487, 71 S.Ct. 814 (quoting *Ex parte Irvine,* 74 F. 954, 960 (1896) (Taft, J.)).

In light of these precedents we cannot say that the California Court of Appeal decision was contrary to, or an unreasonable application of, law established by the Supreme Court. There is no question that a witness's credibility is properly subject to exploration once he takes the stand. Indeed, Arredondo does not quarrel with the prosecution's right to discredit Hansen by his criminal record or with Hansen's right to invoke his Fifth Amendment privilege with respect to his prior convictions and pending theft charge. He posits impropriety only in disallowing *all* testimony when the privilege would have extended only to "collateral" matters. However, this is not a distinction that the Supreme Court has made, so the California Court of Appeal's decision is not contrary to clearly established law. *See Williams v. Borg,* 139 F.3d 737, 741 (9th Cir.1998) (rejecting a defendant's attempt to "elevate to a constitutional level the distinction between cross-examination on collateral and non-collateral matters").

While the right to call witnesses on behalf of the defense is well established, the Supreme Court has indicated that the right is not without limitation and it has never indicated that a trial court has no discretion in determining whether the areas on which a defense witness has properly invoked the Fifth Amendment will so affect the probative value or prejudicial impact of his testimony as a whole that he should not be allowed to take the stand at all. The alternative is for the witness to testify on direct, then to strike his testimony upon refusal to answer any questions on cross-examination having to do with his credibility. It is not objectively unreasonable for the trial court in Arredondo's case to have perceived that such an exercise would have been pointless, confusing and wasteful. Hansen's *unimpeached* testimony could have been helpful to Arredondo because it would have bolstered Arredon-

do's position that Reed was the aggressor. However, his testimony then would have been *impeached* and his perception stopped at the door, for it was inside the room that the real fight—and the credibility contest between Reed and Arredondo—took place. In any event, the trial judge had heard the evidence and was in the best position to gauge Hansen's claim of privilege and its effect on the case before him. Even though a stipulation to the damaging information that would otherwise be elicited on cross-examination may have alleviated the conundrum, there is no requirement embedded in Supreme Court law that the witness or the prosecution accede. Finally, the defense is not without options in these circumstances, for immunity may also be sought for the witness.

AFFIRMED.

KOZINSKI, Circuit Judge, concurring in the result:

I join the majority's analysis of the duty of states to provide meaningful argument under *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). I also concur in the result reached by the majority. I write separately because I disagree with the majority's conclusion that the state courts here adopted a not unreasonable application of clearly established federal law.

Arredondo's trial was, at bottom, a credibility contest between Arredondo and his alleged victim, Reed, that came down to this question: Which of these men threw the first punch and, therefore, was more likely the aggressor in the fight that ensued in Reed's room? To help answer that question, Arredondo sought to call Jeffrey Hansen as a witness. Hansen was the only person at trial, other than Arredondo and Reed, who could offer the jury any direct perspective on this critical issue. Nevertheless, the trial judge excused Hansen from testifying, because Hansen planned to invoke the privilege against self-incrimination in response to certain questions on cross-examination by the prosecution. The California Court of Appeal affirmed.

Arredondo argues in part that the exclusion of Hansen's testimony was either contrary to, or involved an unreasonable application of, *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). *See Williams v. Taylor*, 529 U.S. 362, 405–09, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); 28 U.S.C. § 2254(d)(1). I agree with the majority that the exclusion was not contrary to *Washington*. Arredondo does not argue that the court of appeal applied the wrong rule of law. Nor were the facts of *Washington* indistinguishable from those of his own case for, as the majority points out, *Washington* did not involve a witness's invocation of the privilege against self-incrimination. Maj. op. at 782.

Whether the exclusion of Hansen's testimony involved an unreasonable application of *Washington* is a much tougher question. The majority reasons that, because *Washington* did not involve the assertion of the privilege against self-incrimination, it is not controlling. But "[s]ection 2254(d)(1) permits a federal court to grant habeas relief based on the application of a governing legal principle to a set of facts different from those of the case in which the principle was announced." *Lockyer v. Andrade*, 538 U.S. 63, 76, 123 S.Ct. 1166, 1175, 155 L.Ed.2d 144 (2003). Indeed, the Supreme Court framed its holding in *Washington* more broadly than the facts of the case before it, establishing the principle that a state may not "arbitrarily den[y a defendant] ... the right to put on the stand a witness who was physically and mentally capable of testifying to events that he had personally observed, and whose testimony would have been relevant and material to

the defense." *Washington*, 388 U.S. at 23, 87 S.Ct. 1920.

That principle is surely applicable here. Quite simply, to paraphrase *Washington*, the state trial court denied Arredondo the right to put on the stand Hansen, a witness physically and mentally capable of testifying to events he had personally observed, whose testimony would have been relevant and material to Arredondo's defense. The only question is whether the court did so in an objectively unreasonable manner—as always, the devil is in the details.

If Arredondo had sought to compel Hansen to relinquish the privilege and testify to self-incriminatory matters, I would have no trouble joining the majority. As my colleagues point out, "a defendant's right to present relevant testimony is not without limitation and 'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.'" Maj. op. at 783 (quoting *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973)). Indeed, the *Washington* Court made clear that its holding in no way trumped the privilege. *Washington*, 388 U.S. at 23 n. 21, 87 S.Ct. 1920.

But Arredondo did not seek to extinguish Hansen's invocation of the privilege. Rather, he asked the trial judge to compel Hansen's testimony on nonincriminating matters. The trial judge refused, and the court of appeal affirmed on the rationale that "Hansen's assertion of the Fifth Amendment on cross-examination would have deprived the prosecutor of his right to cross-examine and would have resulted in the striking of Hansen's direct testimony." *People v. Arredondo*, No. B132564, at 7 (Cal. Ct.App. June 28, 2000) (mem.). The question, then, is whether Arredondo's right to present relevant evidence had to bow to the prosecution's desire to impeach Hansen as to certain matters on cross-examination.

That is a close question, and it merits close consideration. In habeas cases, "[w]e employ a balancing test for determining whether the exclusion of testimony violates due process." *Alcala v. Woodford*, 334 F.3d 862, 884 (9th Cir.2003) (citing *Miller v. Stagner*, 757 F.2d 988, 994 (9th Cir.1985)). We "weigh the probative value of the evidence, its reliability, whether the trier of fact can evaluate the evidence, whether the evidence is cumulative, and whether the evidence proves integral to the defense theory in evaluating whether admissible evidence was constitutionally excluded," as well as the state's interest in excluding the evidence. *Id.* (citing *Miller*, 757 F.2d at 994).

Hansen's testimony was clearly probative. Hansen was a direct percipient witness to the start of the fight in the hallway outside Reed's doorway. He would have testified that he saw Reed throw the first punch. Thus, his testimony would have tended to support Arredondo's claim that Reed, not Arredondo, was the aggressor. Further, by backing part of Arredondo's story, Hansen's testimony would also have bolstered Arredondo's credibility, thus tending to support Arredondo's account of the events that unfolded inside Reed's apartment and his claim that he acted in self-defense.

As to reliability, there were no circumstances that rendered Hansen's testimony inherently unreliable. The prosecution offered no evidence, for example, that Hansen was *not* on the scene to witness the beginning of the altercation, nor did the prosecution suggest that Hansen's ability to perceive or recall the events was somehow impaired. Moreover, the record reveals no facts suggesting that Hansen's testimony would have been self-serving in any way, or that he personally knew either

Arredondo or Reed, so as to be biased in favor of one or the other. Hansen had apparently even offered to take a lie detector test at one point. As discussed below, the prosecution would have sought to impeach Hansen at trial with prior convictions and a pending alcohol theft charge. But these considerations "did not make his testimony unreliable but instead raised questions about his credibility and the weight his testimony should be accorded. These are issues to be weighed by the jury, not the judge." *Id.* at 885.

In addition, there surely can be no doubt that the jury would have been able to evaluate Hansen's testimony. It presented no complicated or technical issues to navigate and was merely a straightforward narrative of what Hansen witnessed in the hallway of Arredondo's and Reed's residential hotel.

Hansen's excluded testimony also would not have been cumulative, since he was the only eyewitness available to corroborate Arredondo's account of the start of the altercation. *See United States v. Parry,* 649 F.2d 292, 296 (5th Cir. Unit B 1981); *cf. United States v. Dring,* 930 F.2d 687, 690, 695 (9th Cir.1991) (where one witness corroborated defendant's testimony, the similar testimony of another witness would have been cumulative); *United States v. Tafollo–Cardenas,* 897 F.2d 976, 979 (9th Cir.1990) (same).

And, finally, if Hansen's testimony was not essential to Arredondo's defense, it was quite significant. Even the trial judge acknowledged that Hansen's testimony would have been helpful to Arredondo, for what was at the heart of this case was whether Arredondo acted in self-defense.

If Reed had been shown to be the aggressor, Arredondo's self-defense theory would have been more plausible. Perhaps nothing speaks more to the importance of Hansen's testimony than the fact that the prosecution strove so mightily to keep it out— refusing even to stipulate, as defense counsel was willing to do, to Hansen's prior convictions in order to lessen the need for Hansen to invoke the privilege.

Of course, that all of these factors weigh in Arredondo's favor is not conclusive. We must also take account of the state's interests, *Alcala,* 334 F.3d at 884, for "[e]ven relevant and reliable evidence can be excluded when the state interest is strong," *Perry v. Rushen,* 713 F.2d 1447, 1450 (9th Cir.1983). The court of appeal concluded that, had Hansen testified and invoked the privilege against self-incrimination in response to the prosecution's cross-examination, the trial court would have had to strike all of Hansen's testimony, thus wasting the time of the jury and the court. The court of appeal reasoned that striking the entirety of Hansen's testimony would have been necessary because the state would not have been able to openly probe certain aspects of Hansen's credibility.

That assertion does not stand for two reasons: It isn't entirely true and, even if it were true, striking all of Hansen's testimony would still have been an extreme sanction unjustified in light of Arredondo's constitutional right to present a defense. The state indicated that it would have sought to impeach Hansen's testimony on two bases—that Hansen had four prior convictions and that a charge of alcohol theft was pending against him.[1] As to the

---

1. In addition, Hansen's lawyer expressed concern that Hansen could later be prosecuted for perjury, and the state trial judge queried whether the terms of Hansen's parole might prohibit his presence at the hotel where the fight between Arredondo and Reed took place. Neither ground is valid in our analysis. A witness cannot invoke the privilege out of fear of a perjury charge as to a statement not yet made. *United States v. Vavages,* 151

prior convictions, the state had two alternatives open to it, other than cross-examining Hansen. First, the defense offered to stipulate to those convictions; the prosecution refused. Second, the prosecution could have introduced the judgments of Hansen's prior convictions. *See* Cal. Evid. Code § 788 ("For the purpose of attacking the credibility of a witness, it may be shown by the examination of the witness *or by the record of the judgment that he has been convicted of a felony* . . . .") (emphasis added). Of course, there is a strategic value to having a jury hear impeaching words come from the mouth of the witness himself, but the bottom line is that the state would not have been prevented from impeaching Hansen with his prior convictions.

All that really hung in the balance for the state, then, was whether it could impeach Hansen with the circumstances that formed the basis of his pending charge. The prosecution could have introduced this evidence as proof that Hansen had committed a crime of moral turpitude, and did seek to use it to impeach Hansen's statement to Arredondo's investigator that Hansen did not know Reed because he did not associate with alcoholics. Or, to dispense with the legalese, the prosecution wanted to tell the jury that Hansen was a thief and a drunk and thus not believable.

Even assuming that this proposition would have carried any real weight with the jury, it was objectively unreasonable for the trial court to excuse Hansen's testimony and for the court of appeal to affirm. The prosecution had available a means to introduce Hansen's prior convictions by documentary evidence rather than by cross-examination. The prosecution further remained free to test the reliability and truth of Hansen's testimony by exploring the circumstances under which he witnessed the events in question. And, finally, the other factors under *Miller* fairly outweigh the prosecution's desire to further impeach Hansen's credibility with the circumstances of his pending charge. This is so because the issue of Hansen's credibility, while important, did not go to the heart of the matter to which Hansen was testifying. The facts underlying Hansen's pending alcohol theft charge had no bearing on what he saw in the hotel hallway. Hansen's credibility was, in other words, a collateral issue. *See United States v. Gould,* 536 F.2d 216, 222 (8th Cir.1976); *United States v. Brierly,* 501 F.2d 1024, 1027 (8th Cir.1974); *Monsoor v. Gagnon,* 497 F.2d 1126, 1130 (7th Cir.1974); *United States v. Norman,* 402 F.2d 73, 77 (9th Cir.1968); *United States v. Cardillo,* 316 F.2d 606, 611 (2d Cir.1963); *Bd. of Trustees v. Hartman,* 246 Cal.App.2d 756, 764–65, 55 Cal.Rptr. 144 (1966); *cf.* 8 John Henry Wigmore, Evidence § 2276, at 457 (McNaughton rev., 1961) ("A witness of course does not, simply by testifying (and 'putting his veracity in issue'), waive his privilege with respect to his criminal acts relevant only to impeach his credibility."). And the striking of a witness's entire testimony is a drastic measure that may be unmerited when the witness invokes the privilege on cross-examination as to collateral matters.[2] *See Denham v. Deeds,* 954

F.3d 1185, 1192 (9th Cir.1998). Further, any reasoning based on the terms of Hansen's parole would be improper. The trial court only speculated about the conditions of Hansen's parole and never made a finding as to the actual terms. Indeed, Hansen's lawyer professed ignorance as to such details during the first hearing on whether Hansen would testify and never raised the parole issue during the second hearing.

**2.** The court of appeal cited *People v. Hecker,* 219 Cal.App.3d 1238, 268 Cal.Rptr. 884 (1990), and *People v. Reynolds,* 152 Cal. App.3d 42, 199 Cal.Rptr. 379 (1984), for the proposition that "Hansen's assertion of the

F.2d 1501, 1504 (9th Cir.1992) (noting in habeas case that exclusion of testimony of defense witness who invokes privilege on collateral matters may be impermissible); *United States v. Esparsen*, 930 F.2d 1461, 1469 (10th Cir.1991) (noting that it is improper to strike testimony in analogous case of prosecution witness who invokes privilege as to collateral matters); *United States v. Lord*, 711 F.2d 887, 892 (9th Cir.1983) (holding in direct-review case that striking defense witness testimony was erroneous when witness invoked privilege on collateral issue); *Monsoor*, 497 F.2d at 1129–30 (holding in habeas case that "it is constitutionally impermissible to strike relevant and competent direct examination testimony where a defense witness on cross-examination invokes the privilege against self-incrimination with respect to collateral questions which relate only to his credibility and do not concern the subject matter of his direct examination"). *But see Williams v. Borg*, 139 F.3d 737, 741 (9th Cir.1998) (holding in habeas case that "[t]he Constitution does not give a defendant a right to testify without subjecting himself to cross-examination which might tend to incriminate him").[3]

Of course, these cases are not clearly established federal law from which Arredondo can draw the constitutional principle that he alleges was violated in his trial and, thus, as the majority recognizes, do

not by themselves mandate that his conviction be vacated. *Hernandez v. Small*, 282 F.3d 1132, 1140 (9th Cir.2002). But neither are these cases irrelevant, for circuit law may be "persuasive authority" on the question of whether a state court's determination was unreasonable, *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir.2003), and these cases remind us that a collateral issue, such as credibility, may be important and yet nonetheless must sometimes be subordinated to the need of the factfinder to hear relevant evidence.

Because the state's interest in impeaching Hansen on cross-examination was outweighed by the other factors under *Miller*, I would hold that the California Court of Appeal's decision was an objectively unreasonable application of *Washington*. Ultimately, however, the error committed by the trial court cannot provide the basis for habeas relief, as it was harmless. The jury heard both Arredondo and Reed testify. Reed admitted that he was the first to make physical contact by pushing Arredondo with his hands, making the question of who threw the first punch less significant. The jury also heard evidence that the knife Arredondo claims Reed wielded was later found in Arredondo's girlfriend's apartment, consistent with Arredondo's story that he took away the knife after Reed passed out. This evidence corrobo-

Fifth Amendment on cross-examination would have deprived the prosecutor of his right to cross-examine and would have resulted in the striking of Hansen's direct testimony." *People v. Arredondo*, No. B132564, at 7 (Cal. Ct.App. June 28, 2000) (mem.). These cases do commit the decision to strike testimony, after the witness has invoked the privilege on cross-examination, to the discretion of the trial judge. However, even these cases caution that such a measure must be undertaken prudently. *Reynolds*, 152 Cal.App.3d at 47–48, 199 Cal.Rptr. 379 ("In light of the critical right involved, the trial court should also realize that striking a defendant's entire

testimony is a drastic solution, which is to be used after less severe means are considered."); *Hecker*, 219 Cal.App.3d at 1248, 268 Cal.Rptr. 884 (same as to defense witness, citing *Reynolds* ).

3. All *Williams* held was that the distinction between collateral and non-collateral matters is not *by itself* of constitutional magnitude, at least as to criminal defendants who take the stand on their own behalf. *Williams*, 139 F.3d at 741–43. The distinction may nonetheless be relevant in balancing the factors under *Miller*.

rated Arredondo's version of events. Finally, the jury also heard Arredondo's investigator testify that Reed had told him that Reed was drunk at the time of the fight, may have used a knife against Arredondo and thought he was missing a knife. The jury thus had the opportunity to weigh Arredondo's story, evidence corroborating it and the apparent absence of any wounds on his part, against Reed's account and the documented injuries he suffered that required hospitalization. In light of the evidence the jury heard, the exclusion of Hansen's testimony likely did not have a " 'substantial and injurious effect' " on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)).

Because I believe exclusion of Hansen's testimony was harmless, I concur in the result reached by the majority. In addition, I join my colleagues' analysis of *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). Beyond that, I cannot go.

As a final note, I distance myself from the majority's parting observation that "the defense is not without options in these circumstances [such as Arredondo's], for immunity may also be sought for the witness." Maj. op. at 784. Certainly defense counsel may seek immunity, but this will give little consolation to criminal defendants in California. In California, most requests for immunity will fall under section 1324 of the Penal Code, which provides a means by which a prosecuting agency can seek immunity for a state witness.[4] 1 B.E. Witkin & Norman L. Epstein, California Criminal Law § 231, at 602 (3d ed.2000). It does not provide that a defendant has the right to obtain immunity for witnesses in aid of his defense. As explained in *People v. Pineda*, 30 Cal. App.3d 860, 106 Cal.Rptr. 743 (1973), *overruled on other grounds by Leversen v. Superior Court*, 34 Cal.3d 530, 539 n. 4, 194 Cal.Rptr. 448, 668 P.2d 755 (1983), "*prosecuting attorneys are vested with discretion in requesting immunity* and the state is under no obligation to make a witness available to testify for a defendant by granting him immunity from prosecu-

---

**4.** That provision states in its entirety:

In any felony proceeding or in any investigation or proceeding before a grand jury for any felony offense if a person refuses to answer a question or produce evidence of any other kind on the ground that he or she may be incriminated thereby, and if the district attorney of the county or any other prosecuting agency in writing requests the court, in and for that county, to order that person to answer the question or produce the evidence, a judge shall set a time for hearing and order the person to appear before the court and show cause, if any, why the question should not be answered or the evidence produced, and the court shall order the question answered or the evidence produced unless it finds that to do so would be clearly contrary to the public interest, or could subject the witness to a criminal prosecution in another jurisdiction, and that person shall comply with the

order. After complying, and if, but for this section, he or she would have been privileged to withhold the answer given or the evidence produced by him or her, no testimony or other information compelled under the order or any information directly or indirectly derived from the testimony or other information may be used against the witness in any criminal case. But he or she may nevertheless be prosecuted or subjected to penalty or forfeiture for any perjury, false swearing or contempt committed in answering, or failing to answer, or in producing, or failing to produce, evidence in accordance with the order. Nothing in this section shall prohibit the district attorney or any other prosecuting agency from requesting an order granting use immunity or transactional immunity to a witness compelled to give testimony or produce evidence.

Cal.Penal Code § 1324.

tion." *Id.* at 868 (internal citations omitted); *see also Daly v. Superior Court,* 19 Cal.3d 132, 146, 137 Cal.Rptr. 14, 560 P.2d 1193 (1977); *People v. Thompson,* 145 Cal. App.3d 918, 923–25, 193 Cal.Rptr. 782 (1983). In light of California law, we can hardly hold defense counsel's failure to request immunity for Hansen against Arredondo. Moreover, as a practical matter, the prosecution in this case seemed particularly obdurate. Given the state's unwillingness to stipulate even to Hansen's prior convictions, as suggested by defense counsel, a request of immunity for Hansen would in all likelihood have been futile.