[Crim. No. 849.  Second Appellate District, Division One.—February 23, 1922.]

## THE PEOPLE, Respondent, v. G. S. BOARDMAN, Appellant.

[1] CRIMINAL LAW — RAPE — EVIDENCE—REFUSAL OF PROSECUTRIX TO DESCRIBE ACTS.—In a prosecution for rape, it is error to deny the defendant's motion to strike out the testimony of the prosecutrix where, although on direct examination she testified that the defendant had had sexual intercourse with her at the time and place specified, and to the general question as to whether she knew what sexual intercourse was she answered "Yes, sir," on cross-examination she persistently refused, without any reason, to describe the acts which were done.

[2] ID.—PROOF OF PENETRATION — CONCLUSION OF WITNESS.—In such prosecution, in view of her refusal, without any reason, to describe the acts which went to establish the offense, the testimony of the prosecutrix to the effect that the act of sexual intercourse had been committed fell short of establishing the fact of penetration, which is essential to the establishment of the charge of rape, and constitutes a mere conclusion of the witness.

APPEAL from a judgment of the Superior Court of Kern County.  T. N. Harvey, Judge.  Reversed.

The facts are stated in the opinion of the court.

Moody & Rosenthal for Appellant.

U. S. Webb, Attorney-General, and Arthur Keetch, Deputy Attorney-General, for Respondent.

JAMES, J.—Defendant was convicted of the crime of rape. The appeal is from the judgment of imprisonment and from an order made denying a motion for a new trial.

It was charged in the indictment that the act complained of was accomplished with defendant's daughter, who was, at the time, of the age of fourteen years. To sustain a conviction the people relied upon the testimony of John Boardman, a brother of the defendant, and Hazel Boardman, the daughter referred to. The evidence shows that the defendant was the father of three children, all girls, the youngest being Hazel, the one named in the indictment; that for about ten years prior to the commission of the alleged offense the wife of the defendant and mother of these girls had been confined in an insane asylum; that the custody and care of the children had devolved upon the father, who worked at common labor in the support of the family. At the time in question he was living in the county of Kern near the town of Wasco. The quarters available at that place for sleeping purposes were meager, being of shed-like construction, and the father and three girls slept in the same room, which was in part an open-air affair. In this room there were two beds, one of which was occupied by the two elder girls, while the defendant and his youngest daughter occupied the second. It appears that since this daughter was a very small child she had been in the habit of sleeping in the same bed with her father. On the date charged in the indictment a brother of the defendant was stopping at the same place, and at night he used a third bed which was about eighteen feet away from the bed of the defendant. Between the two beds there was some screen or obstruction which it was necessary to look over in order to obtain a view of the space wherein the girls and father slept. This brother testified that on the night in question, after the defendant and Hazel had retired, he, with the intent to observe what transpired, got up and looked across the intervening obstruction at the bed which his brother and niece occupied. This witness testified that both of the elder daughters were away that evening; that he saw his brother awaken Hazel, heard a mumbled conversation, and saw certain movements of the bedclothes which he described. [1] Hazel Boardman, when called as a witness, answered first the direct question as to whether at the time specified her father had had sexual intercourse

with her, and that answer was in the affirmative. She
stated also that defendant had had such intercourse with
her upon a prior occasion. She answered the general ques-
tion as to whether she knew what sexual intercourse was by
the words ''Yes, sir.'' On cross-examination she was asked
to describe in her own words the acts which were done.
She failed to answer that question and failed to answer a
long series of questions calling for similar facts. The com-
bined efforts of counsel on both sides and the court were
fruitless in the attempt to secure a narration of any details
of the occurrence as to which she had made reference in
her direct testimony. To each interrogatory, designed to
elicit these important matters, most pertinent to a proper
cross-examination, there was interposed nothing but silence
on the part of the witness. The court several times inquired
as to whether she could answer the questions and the witness
answered ''No.'' The district attorney suggested that the
court ascertain from the witness if she was not ''feeling
well,'' or whether there was some reason why she would not
testify, whereupon the court asked the question and received
the following answer: ''Q. Can you give any reason why
you can't at this time tell? A. I don't know if it is true
or not, and I don't want to say it.'' The counsel for the
defendant, in view of this persistent refusal of the witness
to answer proper questions on cross-examination, moved
that her entire testimony be stricken out, which motion
the court denied. In this ruling we think that the court
erred. [2] A case was not made out by the testimony of
the brother, for there was nothing in that testimony from
which the jury would have been entitled to infer that any
act of penetration, which is essential to the establishment of
the charge of rape, had been accomplished. The young girl's
testimony to the effect that the act of sexual intercourse
had been committed fell short of establishing the necessary
fact and stands in the record as a mere conclusion of the
witness, in view of her refusal, without any reason, to de-
scribe the acts which went to establish the offense. Plainly
it appears from the record that the witness was competent
and intelligent; she answered readily enough and in a clear
manner many questions. Her final answer as to her reason
for not detailing the facts called for was that she did not
know whether it was true or not. This very state of mind

made it highly important to the defendant that the jury should have presented to it a description of the things done by the accused in order that it might determine whether the criminal characterization first assigned to those acts by the young girl was justified. The trial judge should have granted the motion to strike out the testimony. The other evidence being insufficient to support the verdict, a miscarriage of justice has resulted, and the defendant is entitled to a new trial.

The judgment and order are reversed.

Conrey, P. J., and Shaw, J., concurred.