[Crim. No. 3219.   Third Dist.   Oct. 18, 1961.]

THE PEOPLE, Appellant, v. CHARLES L. ROBINSON, Respondent.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and Nat A. Agliano, Deputy Attorney General, for Appellant.

John F. Keane for Respondent.

SCHOTTKY, J.—The People have appealed from an order of the Superior Court of Plumas County dismissing an information charging Charles L. Robinson with the crime of burglary in violation of section 459 of the Penal Code.

The evidence produced before the committing magistrate disclosed that a warehouse of the Pacific Gas and Electric Company in Plumas County was forcibly entered on July 7, 1960, and a substantial amount of property, including a typewriter, an adding machine, tools, welding equipment, and a battery charger, was removed from the warehouse.

Later one Marvin Lee was arrested for the offense. He was sentenced to the county jail after entering a plea of guilty to a charge of burglary. Lee was the major witness for the state at the preliminary hearing. He testified that he, a man named Dupre, and the accused were in Marysville on July 7, 1960, when Dupre told Lee and Robinson that he knew where they could obtain copper wire. After discussing the matter, the three men entered Robinson's automobile, a 1951 Nash, maroon and cream in color with a black left front door and a black right front fender. The men drove to the location of the warehouse and parked about a quarter of a mile away. After dark the three men went to the warehouse and forced their way into it. The attempt to take copper wire was abandoned and the items previously referred to were taken. The men then placed the stolen items in Robinson's car and drove to Sacramento where Lee pawned the typewriter.

On cross-examination Lee was asked the following questions: "Q. What happened to the rest of the stuff? A. Peddled it around. Q. Where did you sell it? A. Stockton. Q. Who sold it, you did? A. All of us. Q. Where did you sell it, where was the stuff sold? A. Different people. Q. Well do you know who you sold it to? A. No. Q. Did you sell it to pawnshops? A. Pawnshops and different guys. Q. What did you sell in Stockton? A. Everything we had. Q. Well what was it, what did you sell in Stockton? A. We sold this acetylene torch cable. Q. Who sold that? A. Well all of us sold it. Everything we sold—— Q. Now wait a minute. How did you sell this acetylene torch cable. You say all of us sold it. Where did you sell it? Who did you sell that to? A. I'd rather not say who I sold it to. Q. Well who did you sell the acetylene torch cable to? A. I refuse to answer. MR. KEANE: If the Court please, I'd like an answer to that question. I believe it's material and it goes to the credibility of the witness. Helps to establish what happened here. I see

no ground whatsoever for not answering. THE COURT: Mr. Lee, the Court has the right to know where this material was sold and there is no reason that I can see why you should not answer the question. THE WITNESS: But I can refuse to answer if I want. MR. KEANE: Q. You refuse to answer the question, Mr. Lee? A. (Affirmative nod.) MR. KEANE: I'd like the Court to know that I still want an answer to the question, your Honor, but I will go on to something else to avoid an argument temporarily."

Apparently defense counsel requested that all of Lee's testimony be stricken on the ground that the witness refused to answer certain questions on cross-examination. The committing magistrate did strike that portion of Lee's testimony which related to the disposition of the articles which were removed from the warehouse.

Melvin Hansen, a deputy sheriff of Fresno County, testified that he arrested defendant Robinson in Fresno on August 20, 1960, and that Robinson pointed out as his automobile a 1951 Nash automobile, "an old reddish-brown cream car with a black left front door and a primer right front fender."

Henry F. Kay, a warehouseman for Pacific Gas and Electric Company, testified that he locked up the warehouse at 4:30 p. m. on July 7th, and that when he went back to open it the next morning he found the warehouse door had been forced open and a typewriter, adding machine and other articles hereinbefore mentioned were missing. He identified a typewriter which had been introduced in evidence as the one which had been taken from the warehouse premises.

Roy Friedrichs testified that he was an engineer for the Pacific Gas and Electric Company and had an office adjoining the warehouse; that at about 8 p. m. on the night of July 7th he was going to his office and when about a quarter of a mile from the warehouse he observed an automobile on the side of the road with its hood up and three Negroes standing around it; that it was a light-colored Nash with an off-color door and looked like the car in the picture of defendant's car that was shown to him; that he was in his office about 30 minutes and on his way back he observed the three Negroes walking along the shoulder of the road toward the warehouse; and that the automobile was still parked by the side of the road.

At the conclusion of the preliminary examination Robinson was held to answer. An information was then filed in the superior court. A motion to dismiss the information was

made. It was granted on the ground that the refusal of the witness Lee to answer questions relative to the disposition of the stolen goods cut off a material inquiry on cross-examination and required the striking of all of his testimony. Without Lee's testimony the court held there was insufficient evidence to hold Robinson. Accordingly, the information was dismissed and this appeal followed.

Appellant contends that the superior court in granting defendant's motion to set aside the information erroneously substituted its own judgment for that of the magistrate upon a question of admissibility of evidence. Appellant argues that the superior court had no power on a motion to dismiss the information to review the rulings of the magistrate on the admissibility of evidence and the superior court erred in striking out all of the testimony of a witness called by the prosecution at the preliminary examination because that witness had refused to answer a question on cross-examination.

As hereinbefore set forth, the record shows that on cross-examination the witness, Marvin Lee, was asked what disposition had been made of the remainder of the stolen property. He answered that he, the defendant and Dupre had sold it all in Stockton to different people. On further questioning however he refused to identify the purchasers, stating he did not want to incriminate them. The magistrate ruled at the conclusion of the preliminary hearing that the portion of the testimony of the witness which related to the disposition of the stolen goods was stricken from the record but that there was sufficient evidence aside from such testimony upon which the defendant could be held to answer and accordingly bound him over for trial in the superior court.

Section 995 of the Penal Code provides that the information must be set aside by the court in which the defendant is arraigned in either of the following cases:

1. That before the filing thereof the defendant had not been legally committed by a magistrate.

2. That the defendant had been committed without reasonable or probable cause.

To construe section 995 of the Penal Code as providing for a full-scale review of the evidentiary rulings of the magistrate would be contrary to the purpose of the preliminary examination. ▮ The scope of review is simply to determine whether the magistrate has held the defendant to answer without reasonable or probable cause to believe a public offense has been committed with which the defendant is

connected and not whether the magistrate erred on questions of admissibility of evidence. The only qualification to this principle is that a defendant has been held to answer without reasonable or probable cause if his commitment is based entirely on incompetent evidence. (*Priestly* v. *Superior Court,* 50 Cal.2d 812 [330 P.2d 39]; *Rogers* v. *Superior Court,* 46 Cal.2d 3 [291 P.2d 929]; *People* v. *Wilson,* 183 Cal.App.2d 149 [6 Cal.Rptr. 872].)

We do not believe that the magistrate in the instant case was compelled to strike all of the testimony of the witness Lee because of his refusal to answer questions as to whom the stolen articles were sold in Stockton. Lee had already testified in detail as to breaking into the warehouse and taking the various articles. He testified on cross-examination that the typewriter was sold to a pawnshop in Sacramento. The stolen typewriter was introduced in evidence, so it is clear that it had been recovered. Lee then stated that the remaining articles were sold in Stockton but refused to tell to whom they were sold. The magistrate struck out all of the testimony relating to the final disposition of the stolen property upon motion of defendant's counsel but held that ''the balance of the testimony in evidence indicates that there has been a crime committed and that there is reasonable cause to believe this defendant is connected with that crime.''

Respondent contends that all of the testimony of Lee was rendered incompetent when on cross-examination he refused to answer the questions as to whom the remaining stolen articles were sold in Stockton. He relied upon the following California cases: *People* v. *Boardman,* 56 Cal.App. 587 [205 P. 877]; *People* v. *McGowan,* 80 Cal.App. 293 [251 P. 643]; *People* v. *Seitz,* 100 Cal.App. 113 [279 P. 1070]; and *People* v. *Manchetti,* 29 Cal.2d 452 [175 P.2d 533].

In *People* v. *Boardman, supra,* the defendant was charged with rape of his 14-year-old daughter. The daughter testified merely that defendant committed an act of sexual intercourse. Her uncle testified merely that he observed certain movements of the bedclothes beneath which were the defendant and his daughter. On cross-examination the girl would not describe the physical act committed by defendant. It was held that her direct testimony should have been stricken under the circumstances. The court reasoned that no act of penetration could be inferred from the testimony of either the girl or her uncle. The girl's characterization of the act as sexual intercourse

was useless to the jury in light of her failure to complement it with a detailed description.

In *People* v. *McGowan, supra,* the defendant, charged with attempted robbery, testified that at the time of the commission of the robbery he was with a young lady. He refused, however, to state her name. The trial court struck all of the defendant's testimony on motion of the district attorney. The appellate court upheld the trial court's action, citing the general rule that the court has a right to strike the testimony of a witness who refuses to answer proper questions on cross-examination.

In *People* v. *Manchetti, supra,* a prosecution witness, after giving damaging testimony on direct examination and after only a few questions on cross-examination, was excused because of illness. The court subsequently refused defendant's request to recall the witness for cross-examination and then denied a motion to strike all of his testimony. The Supreme Court held this to be reversible error because of special circumstances attending the case and the meager cross-examination afforded the defendant.

In *People* v. *Seitz, supra,* an accomplice of the defendant charged with robbery testified on direct examination that he and an assistant had actually committed the robbery at the instigation of the defendant. On cross-examination he refused to identify his assistant in the robbery. A motion to strike his testimony was denied. The appellate court, acknowledging the rule that the trial court "has the authority" to strike the testimony of a witness who refuses to answer proper questions on cross-examination, held that reversible error was not committed since the identity of the assistant sought was otherwise available to the defendant.

It is to be noted that in each of the above cases the subject matter of the cross-examination of which the defendant was deprived went to the heart of the controversy. In *Boardman* it involved a vital element of the offense of rape. In *McGowan* it involved the very presence of the defendant at the scene of the crime. In *Manchetti,* of course, there was substantially no cross-examination of the witness afforded.

In the instant case, on the other hand, the witness refused to answer but one question which, though relevant to the credibility of the witness, had no bearing on the actual elements of the crime of burglary with which the defendant was charged.

Further, the cases relied upon by respondent were appeals from judgments of conviction wherein a full-scale review of

procedural matters and questions of admissibility of evidence is provided. Such remedy would be available to respondent in this case if upon a trial in the superior court the witness still refused to identify the purchasers of the stolen goods.

While it is true, as stated by respondent, that cross-examination is the greatest engine for the development of truth ever devised; that cross-examination is a matter of right and not of privilege; and that its denial may constitute a denial of due process, we do not believe that the order of the superior court dismissing the information in the instant case can be sustained. The general rule on the subject is expressed by Professor Wigmore as follows:

"(2) Where the witness, after his examination in chief on the stand, has *refused* to submit to cross-examination, the opportunity of thus probing and testing his statements has substantially failed, and his direct testimony should be struck out. *On the circumstances of the case, the refusal or evasion of answers to one or more questions only need not lead to this result.* [Emphasis added.] . . .

"Courts treat this situation with varying degrees of strictness. It should be left to the determination of the trial judge, regard being had chiefly to the motive of the witness and the materiality of the answer." (5 Wigmore, Evidence [3d ed.] p. 112.)

The last sentence of the rule enunciated by Wigmore has been followed in *Stephan* v. *United States,* 133 F.2d 87, cert. denied 318 U. S. 781 [63 S.Ct. 858, 87 L.Ed. 1148]; *United States* v. *Toner,* 173 F.2d 140; and it has been recognized in *State* v. *Davis,* 236 Iowa 740 [19 N.W.2d 655].

And as stated in *People* v. *Manchetti, supra,* at page 461: "According to Professor Wigmore, 'Principle requires in strictness nothing less. But the true solution would be to avoid any inflexible rule, and to leave it to the trial judge to admit the direct examination so far as the loss of cross-examination can be shown to him to be not in that instance a material loss.' (5 Wigmore, Evidence (3d ed.) p. 110; . . .)"

As hereinbefore stated, upon a motion to dismiss an information under section 995 of the Penal Code the scope of review is simply to determine whether the magistrate has held the defendant to answer without reasonable or probable cause to believe that a public offense has been committed and that the defendant is connected with it.

As stated in *Weber* v. *Superior Court,* 35 Cal.2d 68, 69 [216 P.2d 871], the issue before the reviewing court on a motion

to set aside an information "does not concern the quantum of evidence necessary to sustain a judgment of conviction." The court is only to determine whether the magistrate, acting as a man of ordinary caution or prudence, could conscientiously entertain a reasonable suspicion that a public offense had been committed in which the defendant had participated. (See also *Davis* v. *Superior Court,* 78 Cal.App.2d 25 [177 P.2d 314].)

The record shows that Lee testified without objection on cross-examination to the parking of the automobile by the side of the road near the warehouse and to the breaking into of the warehouse and the taking of the typewriter and other articles and that the typewriter was sold to a pawnshop in Sacramento. After he had so testified, he was questioned as to the disposition of the "rest of the stuff," and while he answered that it was all sold in Stockton, he refused to state to whom it was sold.

As hereinbefore set forth, there was evidence from which it could reasonably be inferred that the automobile of respondent was the one used in the burglary and that one of the articles taken was the typewriter which Lee testified was sold to a pawnshop in Sacramento and which was introduced in evidence.

The magistrate struck out the testimony of Lee relating to the stolen articles which he testified were sold in Stockton but did not strike out the remainder of his testimony. We believe that the question of whether or not all of Lee's testimony should have been stricken out was one which, in the words of Professor Wigmore, "should be left to the determination of the trial judge," and that upon the record in the instant case we cannot say that the court erred in refusing to strike out all of Lee's testimony. We believe that it was properly within the province of the magistrate to hold, as he did hold, that "the balance of the testimony in evidence indicates that there has been a crime committed and that there is reasonable cause to believe this defendant is connected with that crime."

The order dismissing the information is reversed.

Peek, Acting P. J., and Warne, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.