[No. AO22006. First Dist., Div. Five. Feb. 21, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
TRACY LEE REYNOLDS, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*At the direction of the court, and pursuant to California Rules of Court, rules 976 and 976.1, the portion of the opinion certified for publication follows.

**COUNSEL**

Carol Strickman, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Gloria F. DeHart and Thomas A. Brady, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**LOW, P. J.**—Defendant Tracy Lee Reynolds appeals from a judgment entered after a jury found him guilty of attempted escape (Pen. Code, § 4532, subd. (b)). Defendant contends that the trial court violated his right to due process by striking his testimony. We affirm.

It was stipulated that defendant was in lawful custody for a felony. Contra Costa County Sheriff's Deputy Patrick Coyne testified that at approximately 5:30 a.m. on July 20, 1982, while conducting a routine roof check of the Martinez County Jail, he saw a pile of sheets on the ground between the west side of C module and an eight-foot wall facing the street. He went to the area and found what appeared to be seven or eight sheets torn in half and tied together, but did not count the sheets. He also found a vacuum cleaner head, rubber window molding, two chrome strips which had been welded to metal chairs in the module, and "little chips from the window."

Contra Costa County Sheriff's Deputy Darrell Olsen testified that shortly after 5:30 a.m. on July 20, 1982, he was asked to check the upper level

rooms on the west side of C module. In room 35, which was assigned to defendant, he found that the glass had been removed from the window, and no sheets were on the bunk. The window had been constructed with a concrete-covered metal partition in the opening. There was about four inches of open space on either side of the partition; it would be impossible for a person to climb through the opening even with the glass removed. Olsen noted that the partition had a chip in it. He found nothing out of the ordinary in any other rooms.

Defendant testified that on July 18, 1982, he broke the window glass in his room in order to smuggle drugs into the jail after he had been pressured to do so by four other inmates who threatened physical injury. He gave his sheets to a trustee, who returned them tied into a rope with other sheets. He tied a sock or bag onto the end of the rope. On direct examination, defendant detailed how, for two nights in a row, he threw the sheet rope with a bag attached over the perimeter wall, where people placed drugs in the bag. On the first night he brought in methamphetamines, and on the second night, marijuana.

On cross-examination, defendant answered questions about his prior convictions of first degree murder and rape and about the kinds of drugs obtained. The prosecutor then asked for the names of inmates with whom the drugs were shared and defendant stated he would not give any names. The prosecutor asked for the names of inmates who told defendant to break the window and defendant refused to give them, stating, "I'm not saying their names either for the reason I'm going to prison and I will have a snitch jacket on me." The judge ordered defendant to answer and defendant refused.

The prosecutor moved to strike defendant's testimony. During a discussion outside of the jury's presence, defense counsel suggested that a partial striking of that part of defendant's testimony referring to other inmates would be an appropriate sanction. Trial resumed, and defendant again refused to provide names of inmates who threatened him, stating, "If I told you who they were, I would be retaliated upon." After admonishing defendant, the court ordered that his testimony be stricken.

■ The right of an accused to due process of law "is, in essence, the right to a fair opportunity to defend against the State's accusations." (*Chambers* v. *Mississippi* (1973) 410 U.S. 284, 294 [35 L.Ed.2d 297, 308, 93 S.Ct. 1038].) Essential to a fair trial is that the accused have the opportunity to exercise his fundamental, constitutional right to be heard in his own defense by testifying at trial. (*Ibid.*, see also *People* v. *Robles* (1970) 2

Cal.3d 205, 214-215 [85 Cal.Rptr. 166, 466 P.2d 710]; *Townsend* v. *Superior Court* (1975) 15 Cal.3d 774, 781 [126 Cal.Rptr. 251, 543 P.2d 619].)

In addition, the jurors, in fulfilling their duty to decide where the truth lies, are "entitled to have the benefit of the defense theory before them . . . ." (*Davis* v. *Alaska* (1974) 415 U.S. 308, 317 [39 L.Ed.2d 347, —, 94 S.Ct. 1105].) ■ In the instant case, defendant's testimony went to the heart of his defense, lack of specific intent. ■ "To ' "constitute an attempt, there must be (a) the specific intent to commit a particular crime, and (b) a direct ineffectual act done towards its commission. . . ." ' [Citation.]" (*People* v. *Welch* (1972) 8 Cal.3d 106, 118 [104 Cal.Rptr. 217, 501 P.2d 225].) ■ Defendant's testimony consisted of potentially exculpatory evidence that he did not have the specific intent to commit the crime of escape. In this regard, his claim that he was smuggling drugs into the jail was not inherently improbable in light of the evidence that it was physically impossible for a person to climb through the small window opening. Defendant's motive in refusing to answer, that he feared retaliation by prison inmates once he was labeled a "snitch," was not baseless. (See, e.g., *In re Price* (1979) 25 Cal.3d 448, 453-455 [158 Cal.Rptr. 873, 600 P.2d 1330]; *People* v. *Dominguez* (1981) 121 Cal.App.3d 481, 488, 498 [175 Cal.Rptr. 445]; *People* v. *Garcia* (1978) 78 Cal.App.3d 247, 250-251 [144 Cal.Rptr. 176].) However, there is no legal exemption from cross-examination for reasons of this fear.

■ Defendant's constitutional right to testify in his own behalf must be considered in light of the principle that "[w]hen a defendant voluntarily testifies in his own defense the People may 'fully amplify his testimony by inquiring into the facts and circumstances surrounding his assertions, or by introducing evidence through cross-examination which explains or refutes his statements or the inferences which may necessarily be drawn from them.' [Citation.]" (*People* v. *Harris* (1981) 28 Cal.3d 935, 953 [171 Cal.Rptr. 679, 623 P.2d 240].) ■ Here, the prosecutor's cross-examination asking for the identification of other inmates was proper because defendant opened the door by testifying that he was pressured into smuggling drugs by inmates who threatened and aided him. Defendant's refusal to answer relevant questions about the other inmates deprived the prosecution its right to subject that claim to "the greatest legal engine ever invented for the discovery of truth," cross-examination. (5 Wigmore, Evidence (3d ed. 1940) The Hearsay Rule Satisfied: By Cross-Examination, § 1367, p. 29.)

The trial court based its ruling striking defendant's testimony on *People* v. *McGowan* (1926) 80 Cal.App. 293 [251 P. 643]. The defendant in that

case was in the hospital with a gunshot wound when an attempted robbery victim identified him as one of three men who, about an hour earlier, attempted a hold up at a garage, and whom he had shot. (*Id.,* at pp. 294-295.) The defendant, testifying at trial, offered an alibi defense, that he had been shot by a man named Friel while at a different location where he had taken a woman home. (*Id.,* at pp. 295-296.) On cross-examination, the defendant was asked for the woman's name and address and he refused to answer. (*Id.,* at p. 296.) The trial court ordered that his testimony be stricken. (*Ibid.*) Holding that striking the defendant's testimony was proper (*id.,* at pp. 298-299), the court on appeal reasoned that the prosecution had been deprived of its right to cross-examine because the alibi defense "opened the door for cross-examination as to where he had been and with whom he was during that hour and up to the time he claimed to be shot by Friel. [Citations.]" (*Id.,* at p. 296.)

Under the circumstances of this case, we cannot find that the trial court's ruling was an abuse of discretion. Defendant's testimony described a group endeavor to smuggle drugs into the jail. Defendant was only one member of the group; permitting defendant's refusal to name the others would have allowed him to severely limit the prosecution's right to effective cross-examination. The prosecution would have been denied the opportunity to locate the others, in order to confirm or refute the group's activities. Also, the joint endeavor described by defendant occurred within a short period of time; therefore, cross-examination could not have proceeded as to a different period to which defendant may have testified. (Compare *United States* v. *Hearst* (9th Cir. 1977) 563 F.2d 1331 [discussed *infra*].) In this case, any partial striking of defendant's testimony which would still allow effective cross-examination would be extremely difficult, if not impossible.

We recognize that the ruling in this case prevented defendant from exercising a fundamental right. Therefore, we recommend that a full record be made by the trial court establishing the basis for the limitation. ■ In establishing the record, the trial court should recognize that the defendant is exercising a constitutional right and consider the following guidelines: "Where the witness, after his examination in chief on the stand, has *refused* to submit to cross-examination . . . his direct testimony should be struck out. On the circumstances of the case, the refusal or evasion of answers to one or more questions only need not lead to this result . . . . [¶] . . . regard [is] had chiefly to the *motive* of the witness and the *materiality* of the answer." (5 Wigmore, *supra,* The Hearsay Rule Satisfied: By Cross-Examination, § 1391, pp. 112-114, fns. omitted, second and third italics added.)

■ In light of the critical right involved, the trial court should also realize that striking a defendant's entire testimony is a drastic solution,

which is to be used after less severe means are considered. For example, a partial strike is within the discretion of the trial court. (*People* v. *Robinson* (1961) 196 Cal.App.2d 384, 388-391 [16 Cal.Rptr. 484].) In *Robinson,* the chief prosecution witness described in detail how he, another man, and the defendant burglarized a warehouse. (*Id.,* at p. 385.) On cross-examination, the witness testified that the stolen items had been sold, but refused to name the buyer. (*Ibid.*) Defense counsel requested that all of the witness' testimony be stricken; the magistrate struck only the portion relating to the disposition of the stolen articles. (*Id.,* at p. 386.) Holding that the magistrate acted properly, the reviewing court in part reasoned, "the witness refused to answer but one question which, though relevant to the credibility of the witness, had no bearing on the actual elements of the crime of burglary with which the defendant was charged." (*Id.,* at p. 389.)

Another option to be considered is that the defendant's failure to respond to cross-examination may be considered by the jury in evaluating his or her credibility. For example, in *United States* v. *Hearst* (9th Cir. 1977) 563 F.2d 1331, the defendant testified in her own defense, and on cross-examination refused to answer most of the prosecutor's relevant questions concerning one period of time by "invoking" the Fifth Amendment privilege against self-incrimination 42 times. (*Id.,* at pp. 1338-1341.) However, the privilege was not hers to invoke because she waived it by taking the witness stand and describing her activities during that period. (*Ibid.,* relying on *Brown* v. *United States* (1958) 356 U.S. 148, 154-156 [2 L.Ed.2d 589, 596-597, 78 S.Ct. 622, 72 A.L.R.2d 818].) The court held that the prosecutor's continued questioning on matters to which he knew the defendant would refuse an answer was a proper method of impeachment: "[T]he offering of questions designed to elicit invocations of the Fifth Amendment is really only a form of comment upon the defendant's failure to testify, intended to present to the jury the government's interpretation of his credibility . . . ." (*Hearst, supra,* at p. 1342.)

The judgment is affirmed.

King, J., and Haning, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 26, 1984.