Filed 8/2/16  P. v. Argel CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE, | 2d Crim. No. B263628 |
| Plaintiff and Respondent, | (Super. Ct. No. 1488691) (Santa Barbara County) |
| v. | |
| JOHN WILLIAM ARGEL, | |
| Defendant and Appellant. | |

John William Argel appeals judgment after conviction by jury of corporal injury to a dating partner (Pen. Code, § 273.5, subd. (a)),[1] making criminal threats (§ 422), and elder abuse (§ 368, subd. (c)).  He contends the trial court erred when it struck Argel's trial testimony after he refused to answer questions about communication with the victim.  We affirm.

FACTUAL BACKGROUND

Argel and Nicole Gautreaux began dating in December 2013.  The couple engaged in an on-and-off relationship over the next seven to eight months.  In August 2014, Argel and Gautreaux went out for drinks.  Argel spoke with another woman, causing Argel and Gautreaux to argue.

---

[1] All statutory references are to the Penal Code unless otherwise stated.

They went to Gautreaux's house, where the argument continued. It became physical. Argel struck or pushed Gautreaux, causing her to fall on the floor. He climbed on top of her and put his hands on her throat. He may have punched her in the back of the head. He picked her up by her neck and pushed her against a wall. She escaped into the bathroom, but he followed and pushed her against a cabinet, knocking items from the shelves onto the floor. He asked her if she "wanted to die tonight."

Argel made Gautreaux drive him home. When they arrived, he accused her of being unfaithful. He grabbed her hair, and acted as if he was going to burn her face with a cigarette. He apologized, but blamed her for everything that happened.

Gautreaux went home and called 911. When Deputy Sheriff Christopher Macauley arrived, Gautreaux was crying and hysterical. She told him what happened. She had difficulty speaking. Macauley saw marks and bruising on her face and neck, redness and swelling on her arms, bruising and redness on her calf, and red marks along her collarbone. He found fallen items on the bathroom floor.

Deputies went to Argel's home. He stood at the top of the stairs with a gun pointed at his head. He said he would not come downstairs. He said he was a "two-striker" and that he was "not goin[g] back to prison." After a long standoff, he surrendered and was taken into custody.

Prior to trial, the court issued a domestic violence restraining order prohibiting direct or indirect contact with Gautreaux. Argel nevertheless made numerous efforts to contact Gautreaux, including "several hundred" phone calls from jail to her phone. In a November 2014 call, Gautreaux told Argel she forgave him and still loved him.

In December 2014, Gautreaux met with Argel's lawyer and investigator. She said Argel did not assault her. She said she called 911 because she was mad and drunk. She said Argel did not ask her if "she wanted to die."

Gautreaux later decided it was a mistake to contact Argel's defense team. She refused to speak with them further. At trial, she testified that Argel assaulted her.

2

Her testimony was substantially consistent with her statements on the night of the incident.

Argel testified he did not injure or threaten Gautreaux. During cross-examination, he was asked if he violated the protective order barring all contact with Gautreaux. The defense objected. The prosecutor withdrew the question and instead asked Argel if he communicated with Gautreaux after he was arrested. Argel refused to answer. (U.S. Const., 5th Amend.)

The trial court excused the jury and heard argument. It ordered that if Argel refused to answer the question of whether he and Gautreaux discussed possible revisions to her statements, then his prior testimony would be stricken. After conferring with counsel, Argel refused to answer any questions about his communication with Gautreaux. The trial court struck his testimony.

## DISCUSSION

Argel argues that the trial court erred when it struck his entire testimony. We review for abuse of discretion the court's decision to strike a defendant's testimony for refusal to answer questions on cross-examination. (*People v. Reynolds* (1984) 152 Cal.App.3d 42, 47 (*Reynolds*) [no abuse of discretion where defendant refused to answer questions about the identities of other participants in the charged crime.]

Argel contends we should analyze the issue under an independent review standard because he invoked a constitutional right, citing *People v. Cromer* (2001) 24 Cal.4th 889, 901-902 [court independently reviews question whether the prosecution exercised due diligence to locate a potentially exculpatory trial witness.] Regardless of which standard of review applies, the result is the same. The trial court did not err in striking Argel's entire testimony, because Argel "deprived the prosecution its right to subject [his denials] to 'the greatest legal engine ever invented for the discovery of the truth,' cross-examination." (*Reynolds*, *supra*, 152 Cal.App.3d at p. 46, citing 5 Wigmore, Evidence (3d ed. 1940) The Hearsay Rule Satisfied: By Cross-Examination, § 1367, p. 29.)

3

Only Argel and Gautreaux were present during the physical violence. Gautreaux provided statements to law enforcement immediately after the incident which she later recanted, attributing her injuries to other causes. As a result, the prosecution was required to prove that her initial statements were accurate, and that she was motivated to recant her initial statements for other reasons.

The questions Argel refused to answer during cross-examination went to the core issue in the case: Why did Gautreaux deny that physical violence occurred in her pretrial statements to Argel's defense team?

A defendant's right to testify is firmly grounded in the constitution. (*Rock v. Arkansas* (1987) 483 U.S. 44; *Reynolds*, *supra*, 152 Cal.App.3d 42.) "Essential to a fair trial is that the accused have the opportunity to exercise his fundamental, constitutional right to be heard in his own defense by testifying at trial." (*Id.* at p. 45.) But this right is not unlimited. Once a defendant elects to testify, the prosecution is allowed to "'inquir[e] into the facts and circumstances surrounding his assertions, or by introducing evidence through cross-examination which explains or refutes his statements . . . .' [Citation.]" (*People v. Harris* (1981) 28 Cal.3d 935, 953.)

While Argel recognizes his obligation to submit to cross-examination, he argues that the sanction of striking his entire testimony is too harsh. But striking a defendant's testimony can be an appropriate remedy when the defendant refuses to answer questions on cross-examination. (*Reynolds*, *supra*, 152 Cal.App.3d at p. 47.) When balancing a defendant's constitutional right to testify and the prosecution's right to cross-examination, courts look to whether the questions address collateral or noncollateral matters. (*People v. Seminoff* (2008) 159 Cal.App.4th 518, 527 (*Seminoff*).)

The issue of Gautreaux's credibility was not collateral. Given the absence of a third-party witness, it was determinative. The prosecution had to establish that Gautreaux testified truthfully at trial when she explained that she had falsely recanted. The questions which Argel refused to answer went directly to her motivation for falsely recanting.

The trial court did not act precipitously.  It heard argument and warned Argel of the consequences.  It considered less drastic remedies.  It asked the prosecutor whether immunity might be granted for violating the protective order, and whether the violation might be prosecuted as a misdemeanor.  Defense counsel suggested no other remedies.  (See *Seminoff*, *supra*, 159 Cal.App.4th at p. 527.)

The trial court was in the best position to evaluate how important questions which Argel refused to answer were to the determination of whether, and why, Gautreaux recanted.   It reasonably determined that cross-examination on this issue was imperative to placing Gautreaux's entire testimony into context.  The decision to strike Argel's entire testimony was an appropriate response to his refusal to answer questions about their communications.  Whether judged by the independent review or the abuse of discretion standard, there is no error.

## DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

TANGEMAN, J.

We concur:

GILBERT, P. J.

PERREN, J.

5

Rogelio R. Flores, Judge

Superior Court County of Santa Barbara

_____

Mark R. Feeser, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, and David F. Glassman, Deputy Attorney General, for Plaintiff and Respondent.