[No. A138474. First Dist., Div. Four. Feb. 22, 2017.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL ANGELO LENA, Defendant and Appellant.

**1146**

**COUNSEL**

Mark David Greenberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Jeffrey M. Laurence, Laurence K. Sullivan and Moona Nandi, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**STREETER, J.**—Appellant Michael Angelo Lena was convicted of two counts of assault with a semiautomatic firearm upon a peace officer (Pen. Code, § 245, subd. (d)(2)), residential burglary (Pen. Code, § 459), and possession of a firearm by a felon (Pen. Code, § 12021, subd. (a)), for which, with enhancements and prior convictions, he received a sentence of 51 years in state prison. He now appeals, arguing it was error to sanction him for refusing to answer questions on cross-examination by striking his entire testimony, and to admit evidence of various uncharged burglaries under Evidence Code section 1101, subdivision (b) to show intent, motive and common plan. We affirm, addressing the issue of sanctions for refusal to submit to cross-examination in part II.A. of this opinion, which is published, and the Evidence Code section 1101, subdivision (b) issue in part II.B. of the opinion, which is unpublished.

## I. BACKGROUND

On February 17, 1999, police officers responded to a reported home burglary alarm going off in Corte Madera at what was later identified as the Ryborg-Fellows home. The officers encountered Lena in the neighborhood, where at least one home had recently been broken into. Lena, sporting fresh mud on his trousers, got into his car and drove away. The officers found the mud suspicious because it had rained that day and the Ryborg-Fellows home was near a wooded hillside thick with mud from the rain. They therefore followed Lena's car for a short distance and then tried to make a traffic stop. Lena attempted to escape, but cornered himself on a dead-end street, where he jumped out of his car and pointed a gun at the pursuing officers. One of the officers drew his own gun in defense, which surprised Lena, and he fled the scene on foot down a bike path. Unable to catch him, the officers searched Lena's vehicle and discovered an arsenal of firearms that had been stolen in four different burglaries from various locations throughout the Bay Area within a period of less than two years, and a number of stolen passports, one of which had just been taken from Werner Maassen's house, also in the Ryborg-Fellows neighborhood, a short time earlier in the day. The rest of the passports also bore an address in the same neighborhood. When Maassen returned home from work that afternoon, he confirmed that his home had been burglarized and ransacked and his passport stolen. It was the Maassen burglary for which Lena was ultimately prosecuted and convicted in this case.

After his escape from the officers, Lena fled north by truck, avoiding capture, and made it all the way to the Canadian border. But as he attempted to cross the border control point, he behaved suspiciously, and the Royal Canadian Mounted Police tried to apprehend him. The result was a high-speed chase into Canada that ended abruptly with a roadblock and a shootout

with the pursuing Canadian officers. Lena was wounded, taken into custody, and after a brief stint in the hospital, convicted and imprisoned in Canada for discharging a firearm at a person and attempted murder. After serving his sentence, Lena was brought back to California to be tried for the offenses that led to his flight into Canada.

## II. DISCUSSION

### A. Striking of Lena's Testimony

We first address Lena's argument that the trial court erred in striking his testimony, a claimed error which he says deprived him of an adequate defense. Lena contends the striking of his entire testimony was an abuse of the trial court's discretion because the trial court failed to consider less severe alternatives and should have imposed a lesser sanction. We disagree.

#### 1. Lena's Testimony and Conduct at Trial

At trial, Lena chose to represent himself. He based his case primarily on his own testimony, the sum and substance of which were significantly different from what had been reported by California and Canadian police. Lena claimed he was delivering medicine to a friend in Corte Madera when he was pulled over by police officers for no apparent reason. He denied burglarizing any homes, claiming the stolen passports and firearms found in his car had been planted there by both California and Canadian officers sometime during the years he spent in Canadian prison.

Lena claimed he never pointed a gun at pursuing officers in California, and that he fled because he feared the officers were actually federal agents who had been following him for a few years. The only reason he sought refuge in Canada, Lena explained, was because, upon escaping the officers in Marin County, he saw his face plastered across the news as a burglary suspect, and he felt it was in his best interest to flee the country even though he was innocent.

Lena also claimed he passed through the Canadian border without incident, but the Canadian police put up a barricade further down the road in order to stop him. According to Lena, after he crashed into a ditch, Canadian officers snuck up and shot him twice from behind, causing severe wounds which put him in the hospital. He never fired back, he claimed, because he had no gun; he said the firearms the Canadian officers found in his truck, like the guns found in his car in the United States, were plants used to frame him.

After giving his testimony, Lena told the court and the jury he would not answer any of the People's questions during cross-examination. The court

cautioned him against that course, explaining that if he refused to answer appropriate questions during cross-examination, his entire testimony would be stricken from the record. That did not deter Lena, and he replied it would not matter if his testimony was stricken because the jurors would not be able to "delete [his testimony] from their memory."

During cross-examination, Lena held true to his threat and refused to answer any questions. He told the jury he was doing so because he believed the People had "stonewall[ed]" him, and he thought it only fitting to do the same thing to them. Again the court tried to warn Lena it would strike his testimony from the record if he continued acting belligerently, but he was undeterred. In light of his refusal, the court struck his entire testimony.

### 2. The Striking of Lena's Testimony Was Not an Abuse of Discretion

■ A defendant is entitled to a fair opportunity to defend against the state's accusations, which includes the right to give testimony on his own behalf at trial. (See *Chambers v. Mississippi* (1973) 410 U.S. 284, 294 [35 L.Ed.2d 297, 93 S.Ct. 1038]; see also *People v. Reynolds* (1984) 152 Cal.App.3d 42, 46 [199 Cal.Rptr. 379] (*Reynolds*); *People v. Robles* (1970) 2 Cal.3d 205, 214–215 [85 Cal.Rptr. 166, 466 P.2d 710].) If a defendant chooses to exercise that right, the People may cross-examine him to test his credibility or otherwise refute his statements. A defendant does not have the right to present facts favorable to his case without subjecting himself to cross-examination on those facts. (*People v. Harris* (1981) 28 Cal.3d 935, 953 [171 Cal.Rptr. 679, 623 P.2d 240]; *Fost v. Superior Court* (2000) 80 Cal.App.4th 724, 736 [95 Cal.Rptr.2d 620].)

■ Courts have long recognized that when a defendant refuses to submit to cross-examination, a trial court may, in its discretion, impose sanctions. (*People v. Robinson* (1961) 196 Cal.App.2d 384, 390 [16 Cal.Rptr. 484].) The standard governing what sanction is appropriate may be stated, generally, tracking Wigmore's summary of the rule, as follows: " 'Where the witness, after his examination in chief on the stand, has *refused* to submit to cross-examination, the opportunity of thus probing and testing his statements has substantially failed, and his direct testimony should be struck out. *On the circumstances of the case, the refusal or evasion of answers to one or more questions only need not lead to this result.* [Emphasis added.] . . . [¶] Courts treat this situation with varying degrees of strictness. It should be left to the determination of the trial judge, regard being had chiefly to the motive of the witness and the materiality of the answer.' (5 Wigmore, Evidence [3d Ed.] p. 112.)" (*Ibid.*)

Lena relies on *Reynolds, supra*, 152 Cal.App.3d at pages 47–48, a case, like this one, in which the defendant refused to answer questions on

cross-examination after testifying in his defense, and the trial court, as here, struck his entire testimony. (*Id.* at p. 45.) The imposition of that remedy was affirmed on appeal. (*Id.* at p. 47.) In the course of its analysis, the appellate court set forth some guidelines for the exercise of discretion in situations where a trial court is confronted with a defendant who refuses to submit to cross-examination. Because striking a defendant's entire testimony is so drastic, the *Reynolds* panel explained, trial courts should first consider a less severe form of sanction such as instructing the jury to take the defendant's refusal to answer questions into account in assessing his credibility or partially striking his testimony. (*Id.* at pp. 47–48.)

*Reynolds* was a case in which defendant only refused to answer a few specific questions on cross-examination. The questions concerned the identity of a crime partner, and the reason the defendant gave for his unwillingness to answer was fear of retaliation. Even so, his refusal made effective cross-examination "extremely difficult, if not impossible" because the questions went to the core of his testimony. (*Reynolds, supra,* 152 Cal.App.3d at p. 47.) Because the prosecution's ability to cross-examine was materially hindered, the court reasoned, striking the entirety of his testimony was the only appropriate sanction in that situation. (*Ibid.*)

 If anything, the record here provides much stronger support for the striking of testimony in toto than did the record found to be sufficient in *Reynolds.* While the defendant in *Reynolds* had a rational, if ultimately unacceptable, basis for refusing to answer questions put to him on cross-examination, Lena tried to justify his defiance as retaliation for unspecified "stonewalling" by the prosecution, a problem which, had it been real, he should have dealt with by objection when it arose, not by obstructing his own cross-examination. Unlike the defendant in *Reynolds,* moreover, Lena refused to answer any questions at all, even basic questions about identifying information.

It is evident from the record that the trial court appropriately took into account Lena's motive for refusing to submit to cross-examination and considered the degree of hindrance to the prosecution. It is also evident that the trial court took a deliberate, measured approach, first giving Lena multiple warnings before deciding to strike his testimony. Quite obviously, the lesser sanction of partially striking his testimony was not appropriate, because Lena's categorical refusal to submit to any cross-examination did not allow the parsing of his testimony by subject matter. Given Lena's absolutist stance and the frivolous rationale he gave for taking it, the court was well within its discretion to conclude that a lesser sanction was not commensurate with the injury to the truth-seeking process that Lena had inflicted.

Lena insists the court had an obligation to impose the least drastic option. For this argument, he offers a misreading of *Reynolds*. *Reynolds* does not announce, as Lena suggests it does, that the proper sanction *must be* the least drastic option available; it merely states that a court should consider imposing less drastic alternatives before choosing a greater sanction. (*Reynolds, supra,* 152 Cal.App.3d at pp. 47–48.) Here, although the court did not make an express finding that the lesser sanction of instructing the jury to take Lena's refusal to answer cross-examination questions into account in assessing his credibility, we imply that finding. The panel in *Reynolds* pointed out that a less drastic option had been available, but—without an express finding from the trial court on the point—still affirmed the striking of the defendant's entire testimony because a lesser sanction would have been inappropriate. (*Id.* at p. 47.) The same is true here.

B. *Admissibility of Uncharged Burglaries**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## III. DISPOSITION

The judgment is affirmed.

Ruvolo, P. J., and Reardon, J., concurred.

A petition for a rehearing was denied March 24, 2017, and appellant's petition for review by the Supreme Court was denied May 24, 2017, S240445.

---

*See footnote, *ante,* page 1145.